# Mobile Land Improvement Co. *v.* Gass.

*Bill in Equity to have Annulled Deeds of a Corporation.*

1. *Corporation; relation of director and officer; when deed set aside.*—Where a director and officer of a corporation, in disregard and breach of his fiduciary relation, secures the corporate authorities to convey to him property of the corporation, such transaction is voidable, and the corporation can maintain a bill in its own name to have the deed conveying the property set aside and annulled.

2. *Same; same; same.*—Where one who is a director and secretary and treasurer of a corporation, at a meeting of the directors of said corporation in which it was necessary for such person to participate to constitute a quorum, induces said meeting to authorize a conveyance of the corporate property to him, and his vote secured the passage of said resolution, the subsequent conveyance of the property by the corporate authorities in accordance with said resolution can be set aside and annulled by a bill being filed in equity for such purpose by the corporation itself.

3. *Equity pleading and practice; when relief can be given under general prayer.*—Where a bill in equity seeks to have certain conveyances cancelled and annulled upon the ground that they

[Mobile Land Improvement Co. v. Gass.]

are absolutely void, and the averments of the bill and its prayer for specific relief are based upon such theory, but such bill also contains a prayer for general relief, if upon the averments and proof it is shown that the transaction while not void *ab initio* was voidable, and the complainant was entitled to have the conveyances annulled, the relief can be had under the general prayer.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon THOMAS H. SMITH.

This action was commenced by the Mobile Land Improvement Company by a bill in Chancery against H. R. Gass, and was subsequently amended as to make several parties, who purchased the land involved in this suit from him, defendants. The bill alleged that the complainant was a corporation under the laws of Alabama, and that the defendant Gass was the secretary and treasurer of the company and also a director from the 16th day of April, 1889, to the 30th day of April, 1900; that some of the directors of the company resided in Michigan, and some in Mobile, Alabama, and that the residences of the stockholders were similarly distributed; that on the 18th day of November, 1896, the board of directors held a meeting in Flint, Michigan, and adopted a resolution authorizing the president to transfer to the defendant, Gass, three parcels of land belonging to the corporation, each having a front of 50 feet on Michigan Avenue, upon condition that he erect upon each parcel of land a two-story dwelling house to cost at a fair value not less than two thousand dollars, and that no deed should be given him until he had begun the erection of a house on the land covered by it. It alleges that the resolution as spread upon the minutes, however, purported to grant five parcels with frontage of 100 ft. each instead of three lots of land. The bill alleges that there was present at said meeting F. A. Platt, M. P. Cook, I. W. Whitehead and the defendant, H. R. Gass, and that, except for the the presence of said Gass there would not have been a quorum of the directors. It alleges that defendant took possession of the lands described in the resolution as spread upon the minutes, and proceeded to erect houses

upon them with his own means; that when the bill of complaint was filed he had erected a house upon each of four of the parcels of land, but that each house only occupied a space of fifty feet on Michigan avenue; that all of the houses but one had been disposed of to other defendants for a valuable consideration and without notice, and that said Gass had never rendered any account to the company of the profits arising from the sale of the buildings or lots upon which they were erected. That Gass from time to time obtained deed executed by the company through F. A. Platt, its president, and himself as secretary of the company. The bill further alleges that the company had not complied with the provisions of law authorizing it to hold directors' meetings outside of the state and that in April, 1900, the stockholders had repudiated the transaction, and had demanded the cancellation and surrender of the conveyances made to Gass.

The bill prays that the defendant, H. R. Gass, be required to surrender the deeds made to him into the registry of the court to be cancelled, but that, by its decree, the court protect the title of the other defendants who purchased three of the lots in controversy, and for general relief.

The bill attaches copies of each of the four conveyances as exhibits. Each of these conveyances recites that "Whereas the board of directors of the Mobile Land Improvement Company did, at a meeting *in the City of Mobile*, on to-wit the 16th day of February, 1891, adopt the following resolution, viz.: 'Be it resolved, that the lands of this company shall be sold as opportunity may afford at prices satisfactory to the president or vice-president and secretary of the company, and said officers are authorized to make deed to purchasers in such form and with such conditions and covenants respectively as they may deem proper.'" Each conveyance is executed under the corporate seal of the company.

Decree *pro confesso* was rendered against the defendants other than Gass, but the defendant Gass answered the bill admitting the corporate capacity of the company, and that it had power to purchase, own, improve,

rent' or sell real estate, or interest in real estate, to construct buildings upon real estate, and many other powers. He admitted that the appellant had purchased a large body of real estate, and had adopted a system of by-laws for the regulation and conduct of its affairs. He also admits the election of himself as secretary and treasurer and director of the company, and that he retained these offices down to the 30th day of April, 1900, and, further, that some of the directors resided in Michigan, and some in Mobile, Alabama. The defendant by way of pleas in his answer, sets up in detail a number of meetings of the board of directors held by the company in Michigan prior to the meeting of November 18, 1896, and the fact that many matters of importance to the company were authorized at such meetings, and, further shows that practically all of the important business of the company was conducted through meetings of the boards of directors held in Michigan, and that this was well-known to all of the stockholders of the company prior to November 18, 1896. He further attaches a map of the lands of the appellant, and shows that they were vacant lands without houses on them, and constituted an open, unfenced, uncultivated, plain without streets or avenues of any kind, and that complainant purchased this tract for the purpose of laying it off into city lots, and selling them as residences at a profit; that it had the lots plotted and advertised extensively for sale. That prior to November 18, 1896, the company had this land in the hands of several agents, and had been making strenuous efforts to sell as many of these lots as it could, but had failed to make any sales; that all of the stockholders thought it would greatly enhance the value of the property and facilitate the sale of said lots to get some one to build upon one or more of them, and reside there, believing this would induce others to purchase lots and build residences upon them, and thereby greatly enhance the value of the entire property. With this view the directors at a meeting in Flint, Michigan, in April, 1901, authorized their president to enter into negotiations with a Mr. King, Mr. Taylor and Mr. Posey, by which the company was to

give them one lot each on Michigan Avenue, and to build a plank sidewalk in front thereof, and guarantee the extension of the water mains to the lots selected, if they would, within a specified time, put buildings on these lots to cost not less than twenty-five hundred dollars, and pay fifty dollars towards laying the water mains; that the company attempted to induce these parties to accept the lands upon these terms, but failed; that at a meeting held March 7, 1893, a committee that had been previously appointed, reported on the feasibility of a sale of 400 lots on the company's tract on Michigan Avenue, and recommended that three houses should be erected thereon at a cost of not less than eleven thousand dollars; that each purchaser was to obtain a lot without location, and that the location should then be determined by lot, so that three of the purchasers would obtain a house and lot by his purchas; that the sale was had, but the company did not succeed in selling any of the lots. On account of the long continued inability of the company to dispose of any of its property at what it deemed proper prices, or to get any residences constructed thereon, the matter of devising some method to facilitate the sale of lots became a constant subject of discussion among the stockholders, and sometime in 1895 the defendant suggested to some of the directors that to locate residences upon the property he would build, at his own expense and dispose of, to bona fide residents, five residences upon the property, if the company would give him ten lots, or their equivalents, in the tract, he to sell the houses without profit and to have the lots not built upon as compensation for his work and risk. This suggestion was considered by all of the directors who discussed it as the most feasible plan that could be suggested to increase the value of the company's property, but the suggestion was not carried out until 1896, at which time the proposition was accepted and a resolution passed giving him ten lots upon the terms set out in the bill of complaint; that the action of the board of directors in entering into the agreement was known to nearly all of the directors of the company and to many of the stockholders, and that

the defendant spoke to a number of them himself about the matter. In the early part of 1897 he commenced the erection of a house upon one of these lots, and when it was completed he took photographs of it, and showed it to several members of the directory; he sent deeds to the president of the company for the parcel of land upon which this house was erected consisting of 100 foot front on Michigan Avenue, and after the deed was obtained he made efforts to sell this property at the actual cost to him of the building without any compensation for the lot, or for his time, trouble and risk in building and selling the property. He finally sold it to a prominent citizen of Mobile, who occupied it as his residence. As soon as he succeeded in disposing of this building, defendant commenced the erection of another building upon another of the parcels which the company had agreed to convey to him and obtained a deed for that parcel and when that building was completed, he took active steps to dispose of it without profit to himself, and succeeded in selling it to a prominent citizen who made it his home, and as soon as he did so, he immediately commenced the erecton of still another building upon another of said parcels, and obtained a deed to that, and when it was completed took active steps to sell that building without profit to himself, and succeeded in selling it to a prominent citizen who made a residence of it, and he then commenced the erection of the fourth building upon another parcel, and obtained a conveyance of that, but, before he completed that building the bill of complaint in this case was filed. That each of said buildings was so situated that they could be seen by any person passing complainant's land, and so as to be seen by any person passing up and down the principal residence street in the City of Mobile. That each of said buildings cost the defendant between three thousand and four thousand dollars, and that the construction of said several buildings did enhance the value of the entire tract of land, nearly one hundred per cent. over what it would have been worth except for the construction of said buildings and the occupation thereof by citizens as residences. The answer sets up that subse-

quent to that several meetings of the directors and of the stockholders were had without repudiating said transaction, but that finally it was resolved by the board of directors "that they repudiated and disaffirmed the transaction heretofore made with H. R. Gass, whereby certain property of the company was improperly conveyed to said Gass except as to such of said lots that have been sold by said Gass, and except as to lot 18, block 20. The attorney of the company is hereby instructed to commence proceedings for the recovery of said real property, if said Gass refuse, upon the written demand of the company to reconvey said property to the company." The defendant claims that under the facts set up in his answer the company has ratified the transaction made in the first instance, and that in addition thereto it has allowed itself to become estopped from repudiating the same. Several portions of the answer are made pleas to the bill of complaint.

Upon the submission of the cause for a hearing upon the sufficiency of the pleas, the Court rendered a decree sustaining said pleas. Upon the final submission of the cause upon the pleadings and proof, the Chancellor rendered a decree denying the relief prayed for, and ordering the bill dismissed. The complainant appealed, and assigned as error the interlocutory decree of the Chancellor holding the pleas sufficient and the rendition of the final decree denying the relief prayed for and dismissing the bill.

HENRY CHAMBERLAIN and MCINTOSH & RICH, for appellant.—(No brief came to the hands of the reporter.)

GREGORY L. & H. T. SMITH, contra.—The fact that the director of a corporation participated in a meeting of the directors in which a contract was made by the corporation with himself does not vitiate the contract.— Cory v. Wadsworth, 118 Ala. 488; Anderson v Bullock County Bank, 122 Ala. 288

A corporation may ratify unauthorized acts done in its name by its officers and estop itself from asserting relief upon the ground that the officers had no such authority.—Bibb v. Hall & Farley, 101 Ala. 95; Mobile &

[Mobile Land Improvement Co. v. Gass.]

*Montgomery Rwy Co. v. Gilmer,* 85 Ala. 434; *Ala. Gt. Southern R. R. Co. v. South & North Ala. R. R. Co.,* 84 Ala. 570.

A ratification of part of an unauthorized act operates as a ratification of the whole.—*American Freehold Land & Mortgage Co. v. Dykes,* 111 Ala. 190; *Gaines v. Miller,* 111 U. S. 398; *Bingham v. Palmer,* 3 Allen 453; *Shoniger . v. Peabody,* 17 Atl.'278; *Everts et al. v. Selover,* 7 N. W. 225; *Wheeler & Wilson Mfg. Co. v. Aughley,* 22 Atl. 667; *Taylor & Meyers v. Conner,* 41 Miss. 722.

A corporation that has obtained and retained the benefits of an unauthorized act is estopped from repudiating the act.—111 Amer. & Eng. Encyc. of Law, 478; 19th Vol. Century Dig., page 2351 §264; *Mobile & Montgomery Rwy. Co. v. Gilmer,* 85 Ala. 434; *Ala. Gt. Southern R. R. Co. v. South & North Railroad,* 84 Ala. 570.

ANDERSON, J.—While the deeds sought to be cancelled purport to have been authorized by a resolution passed at a meeting in Mobile in the year 1891, it is an undisputed fact, that they were made under and pursuant to a resolution of a bare quorum of directors, at a meeting held at Flint, Michigan in the year 1896. The evidence also discloses the fact, that at said meeting, the presence of and the participation therein by the respondent, Gass, was necessary to constitute a quorum and to give it legal vitality, and that the vote of Gass secured the passage of the resolution.

The directors of a corporation, are the trustees and managing partners, and the stockholders are the *cestui que trust,* and have a joint interest in all of the property and effects of the corporation.—*Robinson v. Smith,* 3 Paige, 222, 232; *Cunningham v. Pell,* 5 Ib. 607; *Slee v. Bloom,* 19 Johns 479.

" 'If this is the relation, then the rules of law applicable to purchasers 'by agents and trustees, apply to the purchase in question. There is a manifest impropriety in allowing the same person to act as the agent of the seller and to become himself the buyer. There may be, in all such cases, a conflict between the duty and interest. Acting for the best interests of the corporation, his

disinterested and unbiased convictions of duty might be to advise against a sale of the entire property to one creditor, or against any sale at all. It is in view of these considerations that, 'the wise policy of the law hath put the sting of a disability into the temptation, as a defensive weapon against the strength of the danger which lies in the situation.' Even these principles would not, in my judgment, apply in the case, if there had been a quorum without Buell.

" 'Now the purchase of property by an agent or trustee, or by any person acting in a fiduciary capacity, is not void *ab origine* and absolutely. It is voidable only. It is made subject to the right of the principle or beneficiary, in a reasonable time, to say that he is not satisfied with it. It is valid in equity as well as law, unless the parties interested repudiate it, or complain of it; and these may set it aside without showing either fraud or injury.—*Bank of old Dominion v. Dubuque Railroad Co.*, 8 Iowa 227; *Davoue v. Fanning*, 2 Johns, Ch. 252; *Bostwick v. Atkins*, 3 Comst. 53, 60; 1 Parsons Cont. 75, 76 and case in note; 1 Lead. Cases in Eq. 167; *MacGregor v. Gardner*, 14 Iowa 326, 335.

" As the principal or parties interested may confirm the sale, a *mere stranger* cannot make the objection, that the trustee was the purchaser; or that the sale was irregular. The remedy belongs only 'to persons who had an interest in the property before the sale, and no other person can apply to set aside the sale.' —*Corey v. Wadsworth*, 118 Ala. 507, 508; *Hawley v. Cramer*, 4 Cow. 717, 744; *Edmondson, v. Welsh*, 27 Ala. 578; *Foster v. Goree*, 5 Id. 428; *Hannah v. Carrington*, 18 Ark. 85; *Herbert v. Henrick*, 16 Ala. 581; *Greenleaf v. Queen*, 1 Pet. 138; 5 Barr, 97; *Wightman v. Doe*, 24 Miss. 675.

The directors of a corporation are its agents. Their position implies that confidence is reposed in them. The duties which a director assumes to the corporation and the stockholders thereof, disqualifies him from binding the corporation in a transaction in which he is already interested.—*O'Connor Mining & Mfg. Co. v. Coosa Furnace Co.*, 88 Ala. 630.

In the case at bar, we find the respondent Gass, not

[Mobile Land Improvement Co. v. Gass.]

only a director but the salaried secretary and treasurer of the company. Not only interested in the donation, but the sole donee. Could there be a stronger appeal for equitable relief, in the absence of actual fraud, the existence or non-existence of which, we deem unnecessary to discuss in order to adjudicate this controversy

We do not think the complainant is estopped from avoiding these conveyances so far as they pertain to the undisposed of lots. The fact that the houses were erected in view of one of the main streets of Mobile, where some of the directors and stockholders may have seen them, or that Gass told Chaudron, (one of the directors) that some of the lots had been conveyed to him, or that the deeds were recorded in a county where a minority of the stockholders, including Gass, resided, was not sufficient to charge the company or stockholders with such notice as would bind them by way of estoppel.

We are familiar with the well established rule, that, a corporation may ratify directly or by implication unauthorized acts of the directors or agents. And that there can be no partial ratification. The acceptance of the fruits of an unauthorized act compels an acceptance of the hardships. But the evidence does not establish any facts from which a ratification can be implied. On the other hand, we find Cook, (one of the directors) repudiating the matter. Just as soon as Platt informed him of the execution of the fourth deed, Cook and Whitehead repaired to Mobile within a short time after the execution of said fourth deed and at once, instigated investigation, reorganized the directory and took speedy steps to inspect the records and books of the company, which had been under the exclusive control and in the possession of Gass since the meeting at Flint. An effort was made at the first meeting to get the books. At the second meeting an attorney was appointed to investigate the acts of the said Gass and report to the company. At the third meeting, possibly after the attorney had reported, we find the directors repudiating and disaffirming the conveyances of the said Gass, except as to the part he had sold to innocent purchasers, and lot 18, upon which he had made valuable improvements, and authorized the at-

34c

torney to institute proceedings at once, in case Gass refused upon demand, to reconvey the lots. The fact that they did not repudiate the conveyances to some of the lots, did not make the omission of said lots, a partial ratification of the transactions so as to preclude the company from rescinding the contract. The resolution clearly repudiated the transaction, but for equitable reasons, omitted three lots sold to innocent purchasers and one upon which respondent Gass had erected valuable improvements.

The chancellor erred in holding that the pleas were sufficient and in dismissing the bill.

Reversed and remanded.

McCLELLAN, C J., TYSON and SIMPSON, J.J., concurring.

## ON REHEARING.

ANDERSON, J.—Counsel for respondent contends that the opinion in this case, while sound in law is based upon a theory foreign to the one advanced by the bill of complaint. It is true the bill by its averments and in the prayer for specific relief, seeks to have the deeds declared void *ab initio*. The bill however, sets out facts which have been established and which are sufficient to enable the complainant to void the deeds upon its timely election. The resolution could not have been passed without the vote of and participation of the defendant in the meeting. The bill also avers in paragraph six that the respondent "in utter violation of his trust as a director of said company and as secretary and treasurer thereof and in disregard of his fiduciary relationship procured said conveyances."

The bill by its averments shows that the transaction was voidable and the relief can be had under the general prayer. "Under a prayer for general relief a party cannot recover a claim distinct from that demanded by the bill." But while the complainant may not be entitled to the relief specifically prayed for, he may under a general prayer, obtain any other specific relief consist-

ent with the case made by the bill.—Beach on Modern
Equity Practice, § 91. "If the facts which he states are
broad enough to give him relief, it matters not how nar-
row his prayer may be, if his bill contains a prayer for
general relef."—*Hill v. Beach,* 12 N. J. Eq. 31-35. Even
if the special prayers were such that no relief could be
granted under them, the court under the general prayer,
may grant an appropriate relief consistent with the case
made by the bill.—*Annin v. Annin,* 24 N. J. Eq. 184.

Here we have a bill seeking to cancel deeds, upon the
primary idea that they are void, with the averments of
facts sufficient to enable the complainant to cancel them
because voidable, with a prayer for general relief. The
cancellation of the deeds because voidable instead of
void would not be inconsistent with the case made by the
bill or distinct from the relief demanded by the bill. The
bill, however, fails to offer to do equity as to lot 18 as
there is no offer to compensate respondent for the im-
provements. Besides, the resolution repudiating the
transaction, omitted the lots sold and lot 18 and, in-
structed the attorney to commence proceedings for the
recovery of said real estate (meaning all but that ex-
cepted and which exception contained lot 18). As a
rule the bringing of a suit implies *prima facie* the au-
thority of the attorney, but this resolution overcomes the
*prima facie* authority of the attorney to sue for this lot
18, and in the absence of any other proof, we must hold
that the bill was not authorized as to lot 18.

The rehearing is denied but the opinion is modified
to the extent of holding that the complainant is not en-
titled to relief as to said lot 18, and is entitled to a can-
cellation of the conveyances as to the unimproved lots,
or to so much thereof as was not conveyed to a *bona fide*
purchaser before this bill was filed.

The decree of the chancellor is reversed and the cause
is remanded in order that he may render a decree in con-
formity with this opinion.

Reversed and remanded, and rehearing denied.

McCLELLAN, C. J., TYSON and SIMPSON, J.J., concur-
ring.