(94 South. 484)

**GRUBBS v. HAWKINS. (2 Div. 771.)**

(Supreme Court of Alabama. Oct. 26, 1922.)

**1. Cancellation of instruments ⬤⟹37(6)—Bill need not set out facts constituting undue influence.**

A bill to cancel deeds for undue influence, unlike one for fraud, need not set out the facts constituting undue influence.

**2. Equity ⬤⟹232—Bill sufficient to authorize cancellation for undue influence not subject to demurrer for imperfect averment of fraud.**

A bill sufficient to authorize cancellation of deeds for undue influence is not subject to demurrer to the whole bill because of an imperfect averment as to an alternative charge of fraud.

**3. Deeds ⬤⟹203—Testimony that grantor made will subsequent to deeds held immaterial.**

In a suit to cancel deeds for undue influence, testimony that grantor made a will subsequent to the deeds devising the property conveyed to another was properly excluded as immaterial.

**4. Appeal and error ⬤⟹1033(3)—Exclusion of evidence strengthening adverse witness' testimony not prejudicial to respondent.**

In a suit to cancel deeds from complainant to respondent, who reconveyed to complainant's son and took back a mortgage as security for an amount advanced to pay complainant's daughter her share of the net proceeds pursuant to an alleged agreement between complainant and her son, by which he was to purchase the property and divide the proceeds equally among the three, exclusion of testimony that complainant made a will subsequent to the deeds devising her property to her daughter *held* not prejudicial to respondent; such proof tending to strengthen rather than weaken the testimony of the son, who, if no will were made, was interested as an heir notwithstanding respondent's mortgage.

**5. Appeal and error ⬤⟹1057(1)—Exclusion of testimony reflecting on witness' testimony by showing interest held not prejudicial.**

In a suit to cancel deeds from complainant to respondent, exclusion of evidence that complainant, after execution of the deeds, made a will devising her property to another, *held* not prejudicial to respondent, because it reflected on devisee's testimony by showing interest, where the record abundantly showed that she was interested and she did not testify to any material fact that was seriously controverted.

**6. Parent and child ⬤⟹9(3)—Donation from parent to child raises no presumption of undue influence, in absence of reasonable inference that parent's domination has ceased.**

A donation from a parent to a child raises no presumption of undue influence, unless the circumstances afford a reasonable inference that the parent's presumptive domination has ceased, whereupon it is incumbent on the child to establish the fairness of the transaction.

**7. Appeal and error ⬤⟹1010(1)—Trial court's decree like jury's verdict on facts if supported by evidence.**

A decree of the trial court, who saw and heard the witnesses, is like the verdict of a jury on the facts, if supported by any evidence.

**8. Deeds ⬤⟹211(4)—Evidence held to support finding of undue influence.**

In suit to cancel deeds, evidence *held* to support finding that they were induced by grantee and grantor's son who dominated her, and that she was overreached in the transaction, and that she acted without independent advice.

**9. Cancellation of instruments ⬤⟹57—Mortgage to grantee by grantor's son, to whom property was reconveyed, held subject to cancellation in so far as cloud on grantor's title, though not attacked in bill to cancel deed.**

In a suit to cancel deeds for undue influence by grantee and grantor's son, a mortgage executed to grantee by the son, to whom the grantee reconveyed *held* subject to cancellation, in so far as it operated as a cloud on the title of grantor, her heirs and assigns, other than such son, though not attacked by averment or prayer; the primary equity of the bill being to clear complainant's title by removal of such clouds, which were mere incidents to the original deeds and not invalid on their face.

**10. Mortgages ⬤⟹415(1)—Mortgage conveying no present title not foreclosed though binding on mortgagor.**

A mortgage conveying no present title to the property covered will not be foreclosed, though binding on mortgagor and capable of being fed by any title or interest subsequently acquired by him, as the chancery court will never do a vain and useless thing; for whether the mortgage will be fed by a future acquired interest is a mere speculation, so that decree of foreclosure would be premature.

Appeal from Circuit Court, Greene County; R. I. Jones, Judge.

Bill by Louisa F. Hawkins against Allen N. Grubbs and John C. Hawkins to cancel deeds. From a decree granting the relief prayed, respondent Grubbs appeals. Corrected and affirmed.

In substance, the bill alleges that the complainant is over 80 years of age, a widow, and the mother of respondent John C. Hawkins and of Mrs. Fannie Hewlett; that shortly before the execution of the instruments in question complainant had sustained an injury from which she suffered and was confined to her bed at the time of the execution of said instruments. It is alleged that for five years complainant lived alone on her plantation with her son, the respondent John C. Hawkins, who looked after her business affairs; that respondent Grubbs was a neighbor and friend and one in whom she reposed faith and confidence; that on the night of December 8 or 9, 1919, the respondents, Grubbs and Hawkins, and one Montgomery, a notary public, came to her room and presented the papers in question for her signa-

ture; that these papers were represented by the respondents to relate to trivial matters, the execution of which would be of benefit to her. It is alleged that not until some time afterwards did the complainant learn that the papers she had signed were a deed to respondent Grubbs to her plantation and a deed to a village lot to the said Grubbs; and that she later ascertained that one of the papers executed by her at said time was a bill of sale of her personal property to the said Grubbs; that the consideration recited in the respective instruments was $8,400 for the plantation, $50 for the village lot, and $1,000 for the personal property, but that no consideration whatever was paid to her.

The bill further alleges that complainant is informed that the respondents claim that the conveyances in question were executed by her in furtherance of an agreement between complainant and her son, and claim that the complainant agreed to sell to her son the plantation containing 486 acres at $35 an acre, less the amount of a certain mortgage then existing on the land which her son was to assume; that the net proceeds should be divided one-third to complainant, one-third to her son, and one-third to her daughter, but that the son should retain complainant's one-third in consideration of his promise to support and maintain complainant for the remainder of her life, and should pay in cash one-third to the daughter; that the son was a married man, whose wife had deserted him and had gone to another state; and that, since the son could not execute a valid mortgage to secure a loan with which to pay the one-third portion of the daughter, without the joinder of his wife (respondents claim) it was agreed that respondent Grubbs should advance the amount necessary and take title in his name, such title to be so held by him until the son had obtained a divorce, when a reconveyance would be made by Grubbs to the son and mortgage executed by the son to Grubbs.

It is alleged that complainant made no such agreement, or if so, that she has no recollection thereof. It is alleged, in the alternative, that the execution of the conveyances in question was procured by fraud or undue influence, or that complainant was mentally incapacitated at the time to execute them.

Respondent Grubbs constituted his answer a cross-bill, alleging that the transactions were bona fide: that complainant did in fact agree to sell to her son under the arrangement set out; that he made his check for the amount to be paid to the complainant's daughter and gave it to respondent Hawkins, who in turn gave it to complainant, who tendered it to the daughter, by whom it was refused. He further alleges that, after the respondent Hawkins obtained a divorce from his wife, he conveyed the property to him and received from him a mortgage securing the amount he had advanced for the payment to Mrs. Hewlett, the daughter of complainant, and securing other sums subsequently loaned to said Hawkins.

The decree annulled the conveyances executed by complainant to Grubbs, the deed made by Grubbs to Hawkins, and also the mortgage executed by Hawkins to Grubbs on the land in question. From that decree Grubbs alone appealed.

Harwood, McKinley, McQueen & Aldridge, of Eutaw, for appellant.

If the deed was procured by undue influence, facts constituting such undue influence should have been averred. 159 Ala. 546, 49 South. 223; 153 Ala. 459, 44 South. 1022. It was error for the court to sustain objections to respondent's question to the complainant, asking to whom she had devised the land by will. 178 Ala. 447, 60 South. 168; 113 Ala. 562, 22 South. 435. Sanity is the normal condition of the human mind, and where mental incapacity is relied upon, the party pleading it must show the same by a preponderance of the evidence. 81 Ala. 563, 8 South. 215; 159 Ala. 546, 49 South. 223; 201 Ala. 293, 78 South. 69. The court erred in declaring the mortgage from John Hawkins to appellant void. Appellant was a derivative purchaser, and was entitled to protection under the statute. Code 1907, § 3347; 201 Ala. 28, 75 South. 150; 191 Ala. 142, 67 South. 992; 92 Ala. 163, 9 South. 143, 13 L. R. A. 299. A bill seeking to set up fraud must set forth the facts constituting the fraud; the mere conclusion of the pleader that the instrument was procured through fraud is wholly insufficient. 187 Ala. 268, 65 South. 793; 141 Ala. 621, 37 South. 680.

R. B. Evins, of Greensboro, for appellee.

In a bill alleging undue influence, it is not necessary to set out the quo modo. 137 Ala. 267, 34 South. 228; 147 Ala. 346, 41 South. 657; 176 Ala. 258, 57 South. 760; 133 Ala. 548, 32 South. 58. The demurrers were directed to the bill as a whole, but attack merely that phase charging fraud. Since the bill had equity as one charging undue influence, the demurrers were properly overruled. 87 Ala. 323, 6 South. 151; 180 Ala. 128, 60 South. 273; 181 Ala. 344, 61 South. 940; 147 Ala. 504, 41 South. 1010. Where there is weakness of mind, arising from old age, sickness, intemperance, or other cause, and plain inadequacy of consideration, connected with circumstances of undue advantage, a contract made under such circumstances will be set aside in equity. 94 Ala. 530, 10 South. 129; 9 Ala. 662, 44 Am. Dec. 448; 189 Ala. 228, 66 South. 71; 147 Ala. 346, 41 South. 657.

ANDERSON, C. J. [1] The bill in this case seeks to cancel the deeds in question

both on account of fraud and undue influence; and whether sufficient or not in its allegations as to fraud, it contains equity and was not subject to the demurrer as a bill charging undue influence. In the first place, the facts set out, if proven, would constitute undue influence; but, if the undue influence was charged only by way of a conclusion, it would not render that feature of the bill subject to demurrer. It has been finally settled by this court that a bill seeking relief for undue influence, unlike one for fraud, need not set out the facts constituting the undue influence. Strickland v. Strickland, 206 Ala. 452, 90 South. 345; Alexander v. Gibson, 176 Ala. 258, 57 South. 760; Cunningham v. Herring, 195 Ala. 469, 70 South. 148.

[2] The bill being sufficient as for undue influence, whether sufficiently charging fraud or not, was not subject to a demurrer going to the whole bill because of an imperfect averment as to an alternative feature of same. The demurrer as set out on pages 43 and 44 and referred to in the assignments of error go to the whole bill, and not that feature or portion of same which charges fraud, and the trial court did not err in overruling said demurrer. Tillman v. Thomas, 87 Ala. 321, 6 South. 151, 13 Am. St. Rep. 42; McMahon v. McMahon, 170 Ala. 338, 54 South. 165.

[3-5] The trial court did not err in declining to permit the respondent to prove by the complainant that she had made a will subsequent to the deeds devising her property to her daughter, as this fact had no material bearing upon the validity of the previous transaction; for, if the deeds were invalid, the motive or purpose in making a final disposition of the land could not inject validity into them, and, if they were valid, the attempted disposition of the property by a will could in no sense affect the validity of same. Moreover, the will was ambulatory and subject to change or revocation at any time during the life of Mrs. Hawkins. Again, the proffered proof tended to strengthen rather than weaken the evidence of John Hawkins, for if no will was made he had an inheritable interest in the land, and was interested notwithstanding Grubbs' mortgage on same. On the other hand, if the land was devised to Mrs. Hewlett, this would cut John off from a right of inheritance and there was no offer to prove that he was to be secretly benefited through the devise to Mrs. Hewlett. Nor could the exclusion of this evidence be injurious to the respondent because reflecting on the evidence of Mrs. Hewlett by showing interest as the record abundantly showed that she was interested. Furthermore, Mrs. Hewlett did not testify to a single material fact that was seriously controverted.

[6] The rule is well established in this state that a donation from the parent to a child, alone and of itself, will raise no presumption of undue influence, since, in the absence of evidence to the contrary, the parent is presumably the dominant party; yet when the circumstances afford a reasonable inference that the domination of the parent has ceased the presumption of the fairness of the transaction ceases and it is then incumbent upon the child to establish the fairness of same. Gibbons v. Gibbons, 205 Ala. 636, 88 South. 833, and cases there cited and discussed.

[7, 8] The evidence in the case at bar shows that, at the time of the execution of the deeds in question, Mrs. Hawkins was a very old and infirm woman 80 years of age, lived alone with her son John, the real donee or vendee, and that she had recently sustained a personal injury and was so weak or feeble that she was held up or supported in bed when signing the papers. The transaction was almost or quite clandestine and took place a dark muddy night in the presence only of the interested parties and a notary brought there by one of them from another precinct and was so arranged as to miss Mrs. Hewlett, who had been spending the day with her mother, Mrs. Hawkins. It also appears that the servants were ordered out of the room, and some of the evidence shows that Grubbs assured Mrs. Hawkins that she would never want for anything. The proof not only fails to show that Mrs. Hawkins had independent advice, but tends to show that the interested parties, her son John and neighbor and friend Grubbs, saw to it that her daughter or no one else should know about it and that she acted under their influence. There was also an inference that the conveyance of the village lot and personal property was an afterthought of John and Grubbs, one or both, even if they had previously discussed and agreed upon the disposition of the farm, as they in no wise figured in the consideration, as the check for Mrs. Hewlett was for only one-third of the agreed price for the farm less the incumbrance and were not included in the deed which the respondent Grubbs had prepared pursuant to the claimed understanding with Mrs. Hawkins. At least, there was evidence to support this theory of the case, and the trial court saw and heard the witnesses, thereby having an advantage over this court in arriving at a conclusion upon the facts, and its decree is like unto the verdict of a jury. Senior v. State, 205 Ala. 337, 87 South. 592; Ray v. Watkins, 203 Ala. 683, 85 South. 25. We are not only not prepared to say that the conclusion reached was contrary to the great weight of the evidence, but think that it affords a rational support of the finding of the trial court. In other words, that these conveyances were induced by these respondents, who dominated Mrs. Hawkins, that she was overreached in the transaction, and that, while John was the beneficiary upon the surface, Grubbs had designs on the property through trading and trafficking with John. It is

true that Mrs. Hawkins told W. D. Johnston and Dr. Trice that she had sold or deeded the farm to John and named the terms and conditions, but did not mention the village lot and personal property, and evidently did not know that she had also given John this property. Her conversation with these parties, however, must have been after the transaction and was not for the purpose of obtaining independent advice, as each of the witnesses mention the fact that she told them she had sold the place, not that she had agreed to or expected to sell, and each one also mentions the fact that at the time of their conversation Mrs. Hawkins alluded to the fact that Mrs. Hewlett had refused to accept the check for the part of the purchase money intended for her. Moreover, Dr. Trice, a witness for respondent, admitted that the land could have been sold at that time for at least $15 per acre more than the value fixed in arriving at the sum to be paid the daughter, and the trial court could have also inferred that the one-third interest given John for her future support was far in excess of what would be the reasonable cost of same, as Mrs. Hawkins had then attained the biblical limit of fourscore years of age.

[9, 10] It is urged by the appellant that the trial court erred in so much of the decree as canceled the mortgage from John Hawkins to Grubbs, as the same was not attacked by averment or prayer. It is sufficient to say that the primary equity of the bill is to clear the complainant's title to the land by the removal of certain clouds held by these respondents, and, if they have been multiplied by subsequent conveyances from the one to the other, they are mere incidents to the original deeds and, not being invalid upon their face, should be canceled as a cloud and the cancellation of same is thoroughly consistent with the main equity and purpose of the bill, and, this being so, relief was properly awarded under the general prayer. Mobile Co. v. Gass, 142 Ala. 520, 39 South. 229. We are of the opinion, however, that the decree of cancellation as to the mortgage was too broad, and that it should not be surrendered to the complainant and canceled unconditionally upon the record, as it is binding between the parties, and the same should be canceled so far as it may operate as a cloud upon the title of this complainant, her heirs and assignees, other than John Hawkins. We do not think, however, that although the mortgage may be binding upon John Hawkins and is of such a character that it may be fed by any title or interest that John Hawkins may acquire in the future, that the trial court erred in declining to foreclose same. The decree found that the mortgage did not convey any present title to the property therein covered and the chancery court will never do a vain and useless thing. As to whether or not the mortgage will be fed by a future acquired interest or title to the land by the mortgagor is a mere speculation or conjecture, and a decree of foreclosure by a court of equity at this time would be premature.

The decree of the circuit court is corrected as above indicated, and, as corrected is affirmed.

Corrected and affirmed.

McCLELLAN, SOMERVILLE, and THOMAS, JJ., concur.