(101 So. 657)

### COX v. PARKER et al.   (4 Div. 141.)

(Supreme Court of Alabama.   Oct. 23, 1924.)

**I. Cancellation of instruments ⏗37(7)— Wills ⏗282—Quo modo of undue influence need not be alleged.**

In setting up undue influence as equitable ground to cancel deed, or to contest will at law or in equity, quo modo need not be shown; it being sufficient to aver generally that deed or will was result of undue influence of named person.

**2. Cancellation of instruments ⏗37(7)— Averments making case of undue influence, followed by averment that deed was the result thereof, held sufficient.**

Averments making prima facie case of undue influence, followed by averment to effect that deed was result thereof, *held* sufficient.

**3. Cancellation of instruments ⏗37(7)—Bill to cancel for undue influence held sufficient.**

Bill alleging confidential relation between donor and donee, voluntary activity of donee in procurement of deed, that will of donee was dominant, and execution of deed was not donor's voluntary act, *held* sufficient as bill to cancel for undue influence.

**4. Deeds ⏗72(1)—When maker subjected to "undue influence" stated.**

If maker, so reduced by mental and physical weakness as to become passive agent of dominating will of another, signs paper under such influence without mental grasp of nature, purpose, or effect, it is product of undue influence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Undue Influence.]

**5. Cancellation of instruments ⏗43—Proof of mental incapacity disproves undue influence.**

Since undue influence implies mental capacity, but controlled and supplanted by will of another, proof of mental incapacity disproves undue influence, and is not pertinent without allegation raising issue of mental capacity.

**6. Cancellation of instruments ⏗43 — Averment of donor's mental weakness held to raise issue as to soundness of her mind.**

Averment that at time of signing deed donor had become greatly weakened, mentally and physically, and did not know or understand nature and consequences of her act, *held* to raise issue as to soundness of her mind.

**7. Cancellation of instruments ⏗43 — Evidence that donor could not understand nature of act supported averment that she did not.**

Evidence that donor could not understand nature of her act supported averment that she did not.

**8. Cancellation of instruments ⏗14—Bill to cancel conveyance, because grantor non compos mentis, held not to lie in favor of one out of possession.**

Bill to cancel conveyance, because grantor was non compos mentis, will not lie in favor of one out of possession, and having present right to sue at law therefor.

**9. Deeds ⏗72(1) — Undue influence held equitable ground for cancellation.**

Undue influence is within itself equitable ground for cancellation.

**10. Equity ⏗141(1)—Bill in alternative must show equity in either alternative.**

Bill in alternative must show equity in either alternative.

**11. Cancellation of instruments ⏗37(7)—On averment of undue influence, cumulative averments and proof of mental incapacity held allowable.**

On averments and proof tending to support main equity of bill on ground of undue influence, cumulative averments and proof of mental incapacity are allowable, and relief by cancellation properly granted in either event.

**12. Quieting title ⏗1 — Equity has general power to remove clouds from title by cancellation.**

There is general power in court of equity to remove clouds from title by cancellation.

**13. Equity ⏗43—Equity declines jurisdiction, where remedy at law adequate.**

Equity declines jurisdiction, where case in equity shows an adequate remedy at law.

**14. Equity ⏗39(1) — When jurisdiction acquired on equitable grounds, equity proceeds to do complete equity.**

Equity abhors multiplicity of suits, and, when jurisdiction is obtained on equitable grounds, it proceeds to do complete equity.

**15. Wills ⏗88(1)—To give deed effect as testamentary disposition, grantor must have been conscious of impending death.**

To give deed conveying all of grantor's property, including her home, effect as testamentary disposition requires assumption that grantor was conscious of impending death; that her need of a home had terminated; and that she had no further use for property.

**16. Deeds ⏗196(3)—Relation of stepmother and stepson held not to raise presumption of confidential relation.**

Where grantor was widow and grantee a stepson, no presumption of confidential relations between them was raised.

**17. Deeds ⏗196(3)—Burden held to be on one alleging undue influence of child to show change in natural relations.**

As between parent and child, parent is presumed to be dominant party, and burden is on him who sets up undue influence of child over parent to show natural relation had changed, and child had become dominant party.

**18. Deeds ⏗196(3) — No presumption that stepmother dominates stepson.**

Where son has reached manhood, and gone from family roof, before father again marries, no presumption arises, as matter of law, that stepmother occupies position of dominance over him.

---

⏗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**19. Deeds ⬗72(7)—Stepson dominating stepmother owed duty not to take advantage of her confidence.**

Where stepson was dominant party in relations with stepmother, it was his duty to protect her, and not to take advantage of her confidence.

**20. Deeds ⬗196(3)—Evidence held not to discharge stepson donee's burden to disprove undue influence.**

Evidence *held* not to discharge stepson donee's burden to disprove undue influence in deed of stepmother's home to him.

**21. Appeal and error ⬗1009(3)—Decision of chancellor on disputed facts not disturbed, unless palpably wrong.**

Decision of chancellor on disputed facts will not be disturbed on appeal, unless palpably wrong.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Bill in equity by J. M. Parker and others against J. E. Cox. From a decree for complainants, respondent appeals. Affirmed.

C. D. Carmichael, of Geneva, and Farmer, Merrill & Farmer, of Dothan, for appellant.

The burden of proving undue influence rests upon the party who alleges its existence. Blakey's Heirs v. Blakey's Ex'x, 33 Ala. 611; Copeland's Ex'r v. Copeland's Heirs, 32 Ala. 512. As to what constitutes undue influence, see 40 Cyc. 1144; Gleason v. Jones (Okl. Sup.) 192 P. 203; Johnson v. Armstrong, 97 Ala. 731, 12 So. 72; Knox v. Knox, 95 Ala. 495, 11 So. 125, 36 Am. St. Rep. 235; Leeper v. Taylor, 47 Ala. 221; Bulger v. Ross, 98 Ala. 267, 12 So. 803; Burney v. Torrey, 100 Ala. 168, 14 So. 685, 46 Am. St. Rep. 33; Jones v. Brooks, 184 Ala. 118, 63 So. 978; Eastis v. Montgomery, 95 Ala. 493, 11 So. 204, 36 Am. St. Rep. 227; Mullen v. Johnson, 157 Ala. 273, 47 So. 584; Shirley v. Ezell, 180 Ala. 359, 60 So. 905; O'Neill v. Johnson, 197 Ala. 502, 73 So. 21; Cunninghame v. Herring, 195 Ala. 469, 70 So. 148. In transactions between parent and child, the parent is presumed to be the dominant party. Stanfill v. Johnson, 159 Ala. 546, 49 So. 223; Keeble v. Underwood, 193 Ala. 582, 69 So. 473; Hawthorne v. Jenkins, 182 Ala. 255, 62 So. 505, Ann. Cas. 1915D, 707; McLeod v. McLeod, 145 Ala. 269, 40 So. 414, 117 Am. St. Rep. 41. Where the evidence is documentary, or without practical dispute, no presumption is indulged in favor of the finding of the trial court. Owensboro Banking Co. v. Buck, 16 Ala. App. 346, 77 So. 940; Ex parte Buck, 202 Ala. 56, 79 So. 394; Bank v. Elmore Fert. Co., 16 Ala. App. 465, 78 So. 648; Murphree v. Hanson, 197 Ala. 246, 72 So. 437. Complainants' remedy is at law. Lewis v. Alston, 184 Ala. 339, 63 So. 1008; Stewart v. Stewart, 205 Ala. 340, 87 So. 799; Cox v. Davis, etc.,

Co., 206 Ala. 167, 89 So. 437; Smith v. Roney, 182 Ala. 540, 62 So. 753.

Mulkey & Mulkey, of Geneva, for appellees.

Equity has jurisdiction to cancel a conveyance as a result of undue influence, coupled with mental weakness, even though complainant is not in possession. Shipman v. Furniss, 69 Ala. 555, 44 Am. Rep. 528. It is sufficient to allege undue influence, without stating the facts. Birmingham T. & S. Co. v. Cannon, 204 Ala. 336, 85 So. 769; Grubbs v. Hawkins, 208 Ala. 349, 94 So. 484; Powe v. Payne, 208 Ala. 527, 94 So. 587. Where the circumstances afford a reasonable inference that domination of the parent over the child has ceased, then the presumption of the fairness of the transaction ceases, and the burden is on the child to show fairness of the same. Gibbons v. Gibbons, 205 Ala. 636, 88 So. 833.

BOULDIN, J. The bill is for the cancellation of a deed of gift conveying real estate. The deed was made during the last sickness of the grantor. The bill is filed by her heirs at law. By detailed averments the bill alleges confidential relations between the donor and donee, voluntary activity of the donee in the procurement of the deed; that the will of the donee became dominant, and the donor, in making the deed, was dominated and controlled by the will of the donee; that the execution of the deed was not the free and voluntary act of the donor; and (paragraph 9) "that, at the time of the signature by her, she had become greatly weakened mentally and physically, and did not know or understand the nature or the consequences of the act she was about to perform."

[1] In setting up undue influence as equitable ground to cancel a deed, or as ground of contest of a will at law or in equity, the quo modo need not be shown. It is sufficient to aver in general terms that the deed or will was the result of the undue influence of a named persons or persons. Grubbs v. Hawkins, 208 Ala. 349, 94 So. 484; Johnson v. Johnson, 206 Ala. 523. 91 So. 260; Letohatchie Church v. Bullock, 133 Ala. 552, 32 So. 58; Alexander v. Gibson, 176 Ala. 262. 57 So. 760; Strickland v. Strickland, 206 Ala. 452. 90 So. 345; Cunninghame v. Herring, 195 Ala. 469, 70 So. 148.

[2, 3] If the pleader does not adopt this rule, but undertakes to give the facts, they must make a case warranting a finding of undue influence. When the facts averred make a prima facie case of undue influence, followed by averment to the effect that the deed was the result thereof, this is sufficient. We think the bill, as amended, is sufficient as a bill to cancel for undue influence. Coghill v. Kennedy, 119 Ala. 641, 24 So. 459; Powe v. Payne, 208 Ala. 527, 94 So. 587.

---

⬗For other cases, see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[4] It is suggested that paragraph 9, above quoted, avers in substance a want of mental capacity to execute the deed, and renders the bill demurrable. The averment above does not in terms aver that the donor, by reason of physical and mental weakness, was incapable of understanding the nature or consequences of the transaction, but that she did not. This may be taken as a charge that mental weakness so subjected her to the dominance of the will of another that she, in fact, signed the paper not understanding its nature or consequences. If, in truth, the maker of a deed of gift, by reason of severe and protracted sickness, is so reduced by mental and physical weakness as to become the mere passive agent of the dominating will and suggestions of another, signing the paper under such influence, without a mental grasp of its nature, purpose, or effect, it may be regarded as the product of undue influence. Notwithstanding the weakened powers fully aroused and facing other conditions might be capable of the mental process of knowing the property, the person to whom it is to be conveyed, and the manner she wishes to dispose of it—to comprehend the subject-matter of the transaction and will to do it—still, if such weakened mentality furnishes the occasion and the opportunity to one in close confidential relations to interpose his own will and obtain a signature without such comprehension and will to act, this is undue influence.

[5] In taking testimony, evidence was produced by expert witnesses and others tending to show mental incapacity—want of capacity to know and understand the nature of the transaction in which the donor was engaged. The suggestion is made that on an issue of undue influence alone, such testimony should be disregarded; that undue influence implies mental capacity, but controlled and supplanted by the will of another; that proof of mental incapacity disproves undue influence. We consider this position correct.

[6, 7] Without an averment putting in issue the question of mental capacity, testimony on that point, as distinguished from mental weakness in connection with undue influence, is not pertinent. We think the averments of the bill sufficient to raise the issue of the soundness of mind of the donor. While, as stated, it is not charged in terms she was of unsound mind, it is charged that, by reason of physical and mental weakness, she did not understand the nature or consequences of the act. This averment put in issue her mental condition. Evidence that she could not understand certainly supports an averment that she did not. Taking this view of the bill as urged by appellant, and followed in the production of evidence, a question recurs on the demurrer to the bill.

[8] We have held that a bill to cancel a conveyance because the grantor is non compos mentis will not lie in favor of one out of possession, and having a present right to sue at law for possession. The deed being void, the remedy at law is deemed adequate. Lewis v. Alston, 184 Ala. 339, 63 So. 1008.

[9, 10] Undue influence is, within itself, an equitable ground for cancellation. The general rule obtains that a bill in the alternative must show equity in either alternative.

[11] Is a bill for concellation on the ground of undue influence, with cumulative averments of mental incapacity, subject to demurrer? What state of proof will warrant the relief prayed?

[12-14] There is general power in a court of equity to remove clouds from title by cancellation. It declines jurisdiction where the case presented shows an adequate remedy at law. Again, equity abhors a multiplicity of suits, and, when jurisdiction is obtained on equitable grounds, it proceeds to do complete equity.

In Shipman v. Furniss, 69 Ala. 555, 44 Am. Rep. 528, the bill was filed to cancel a deed for fraud and undue influence, and on the further ground that it was never delivered by the grantor. It was declared:

"The bill contains two distinct, independent grounds on which the claim to relief is based; and * * * if either ground is sufficient, its force is not impaired by the fact that it is joined cumulatively with another alleged ground, which, of itself, will not maintain the equity of the bill." Lewis v. Alston, 184 Ala. 339, 63 So. 1008.

The issues of undue influence and mental incapacity usually arise together. Both involve the state of mind of the donor or testator. The issue of unsoundness of mind in the execution of deeds rarely arises, except in connection with some question of undue influence. The issues are triable together in all will contests at law or in equity. The parties interested, as well as the trior of fact, may easily find the deed the result of one or the other, and not be able to decide clearly on which side of the shadowy border line between mental capacity and incapacity the case falls. Equity would furnish a very inadequate remedy, if, on averment and proof of all the elements of undue influence, such as confidential relations with dominating influence, accompanied with voluntary activity in the preparation and procurement of the deed, the complainant should be turned out of court, because it should at last appear the donor had, from sickness or otherwise, become incapable of making a deed. We hold that, upon averment and proof tending to support the main equity of the bill on the ground of undue influence, cumulative averments and proof of mental incapacity are allowable, and relief by cancellation is properly granted in either event. Letohatchie Baptist Church v. Bullock, 133 Ala. 548, 32 So. 58.

[15] The deed in question is in form one of

bargain and sale for a valuable considera-tion, and grants a present title with full cove-nants of warranty, without reservation of the possession, income, or profits for the life of the grantor. It is conceded that the con-sideration expressed in the deed was not paid nor intended to be paid, and the prop-erty is claimed as a gift. It conveyed all the lands owned by the grantor, including the home where she then resided, and had re-sided for several years. It passed the right of immediate possession. It must be treated as a gift inter vivos. To give it effect as a testamentary disposition requires an as-sumption that the grantor was conscious of impending death; that her need of a home had terminated; and that she had no occa-sion for further use of the property. Ban-croft v. Otis, 91 Ala. 279, 8 So. 286, 24 Am. St. Rep. 904; Hutcheson v. Bibb, 142 Ala. 586, 38 So. 754; Young v. Love, 186 Ala. 292, 65 So. 337.

[16] The grantor was a widow, and the grantee occupied the relation of a stepson. This, without more, does not raise a pre-sumption of confidential relations between them, such as the law implies from the re-lation of parent and child. Nelson v. Brown, 164 Ala. 397, 409, 51 So. 360, 137 Am. St. Rep. 61. Without reviewing the evidence, it sufficiently appears that confidential relations in fact did exist; that the stepmother looked to the stepson for business advice; com-mitted her business largely to him; and re-posed entire confidence in him.

[17] The rule is fully established that as between parent and child the parent is pre-sumed to be the dominant party, and hence, no presumption of undue influence arises merely from the confidential relations be-tween them. The burden is on him who sets up undue influence in such case to show the natural relation has changed, and the child has become the dominant party to the trans-action. This grows out of the family rela-tion. During the years of childhood and youth the parent has the duty and authority to command and control; the child is depend-ent, is accustomed to obey and be directed, and normally has a growing reverence for the parent which persists through the years, unless conditions make it otherwise.

[18] Whether this dominance of the step-mother over the stepchild obtains depends on this family relation. Where the son has reached manhood, gone out from the family roof, become his own master, and the fa-ther again marries, we cannot say as matter of law any presumption arises that the step-mother occupies a position of dominance over the stepson. However fine their relations may be, by reason of the common relation to the husband and father, there is not a posi-tion of control or dominance between them.

[19] Again avoiding a review of the testi-mony, we think it appears the stepson was the dominant party in the relations between him and his stepmother. She looked to him and leaned on him for help and advice. In such case the duty obtains to protect and shield the weaker, and to take no advantage of confidence thus bestowed. Undue influ-ence in such case does not rest upon that moral coercion which obtains in testamentary gifts—those which become effective after the donor's death, after the obligations of fidel-ity have ceased. Authorities, supra. On these principles the decree of the court be-low may well be sustained. However, much testimony and much argument here proceeds upon the view that the case should be con-sidered one in the nature of a testamentary gift.

[20] Aside from the evidence of confiden-tial dominant relation of the donee, there is much evidence of his activity in the prepa-ration and execution of the deed. It appears the property in greater part came by the husband, was the homestead at the time of his death in 1911. This had never been set apart to the widow, and upon her death would descend to his heirs, including anoth-er stepson of the donor. The donee sug-gested to her a disposition of her property while she yet lived. This led to proceedings to set it apart to the widow, so as to vest in her a complete title. It appears the donee paid the costs and expenses of this proceed-ing. By the time it was consummated, the donee, 68 years of age, had an attack of pernicious malarial fever. After high fevers for a few days, the fever subsided; at the end of a week the donee removed her from her home to his home; she grew weaker, her temperature became subnormal, and she died from this sickness at the end of two weeks. On the day before her death, the respondent consulted her physician as to the probability of her death; was advised that if she had business to be attended to, it should not be delayed; he then caused the deed to be pre-pared, and with the physician and notary presented and caused the deed to be made. The evidence does not sufficiently show that these latter activities were at the direction of the grantor. There is evidence that she had expressed a purpose to convey him the property, and it is a fair inference that she was proceeding with that in view when tak-en sick. Complainants' evidence tends to show the grantor was extremely weak, was asleep, or in a stupor, and was aroused by the donee; that she was propped up in bed and, being too weak to sign her name, the scrivener placed a pencil in her hand, then guided the hand and pencil while she signed the deed; that she then lay down and dropped off to sleep. It does not appear the contents of the deed were stated to her; the proceeding was carried out on the as-sumption that she was already advised of its contents. By the weight of the evidence, the only words spoken by her were to reply, "All right," when told they had come to make the

deed, and her insistence that she sign her own name, when the suggestion was made that she make her mark. Her abrupt or jocular remark, "You don't think I'm a negro," or words of like effect, indicates a perception of the situation in the matter of signing the paper. It may indicate a sense of independent action, or a mere habitual show of make-believe independence. A careful study of the whole evidence impresses us that the case is brought within the general rule touching undue influence as defined in Coghill v. Kennedy, 119 Ala. 641, 24 So. 459, and Bancroft v. Otis, 91 Ala. 279, 8 So. 286, 24 Am. St. Rep. 904, and that the respondent has failed to meet the burden of proof placed upon him.

[21] We reach this conclusion without the aid of the presumption we indulge, where the testimony is taken orally before the trial judge. However, we do not think it a case in which the evidence is without such substantial conflict that this presumption should not be indulged. There is conflict in the evidence of the occurrences at the time the deed was signed. Some of respondent's testimony denies that the grantor was asleep, and that she was assisted in affixing her signature, claims she signed with a pen, etc. There is conflict between the expert witnesses on the effect of protracted malarial fever followed by death within 24 hours and further testimony tending to impeach a witness by conflicting statements. The nature of the issue rendered the presence, the bearing, the manner of the witnesses, and the general atmosphere of the case, great aids to the trial judge in passing upon the truth of the testimony, and the inferences to be drawn therefrom. His decision should not be disturbed, unless plainly and palpably erroneous.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.