Webster County Buick Company, Appellee, v. Nebraska Buick Automobile Company, Appellant.

No. 41655.

June 20, 1933.

Glen H. Foe, and Helsell, McCall & Dolliver, for appellant.

Mitchell & Mitchell and D. M. Kelleher, for appellee.

486

CLAUSSEN, J.—I. Defendant-appellant was a corporation, organized under the laws of Nebraska, having its principal place of business in Lincoln, Nebraska. Original notice of the present action was served in Webster county on an individual connected in some way with appellant. Appellant entered a special appearance assailing the jurisdiction of the court on the theory that this individual was not such a representative that service upon him gave the court jurisdiction of the defendant corporation. This matter was heard by the court upon affidavits and oral evidence, and the controversy was determined adversely to appellant. Thereupon appellant filed an amended and substituted answer, setting up various defenses, and ultimately the case was tried to a jury, with defendant represented in court by counsel. Appellant complains that the trial court was not justified by the facts in finding against it on the question of jurisdiction. We need not consider whether such complaint has merit, because appellant, having answered and appeared generally, cannot now question the jurisdiction of the court. Crouch v. National Livestock Remedy Co., 205 Iowa 51, 217 N. W. 557; Scott v. Price Bros. Co., 207 Iowa 191, 217 N. W. 75; Music v. DeLong, 209 Iowa 1068, 229 N. W. 673.

II. Appellant was general distributor of Buick cars in western Iowa and Nebraska. Appellee was, in a sense, a local distributor of such cars in a number of counties near Fort Dodge. The parties to the action had been thus engaged for many years prior to the difficulties out of which this suit grows. On August 1, 1928, a contract consisting of two instruments existed between the parties. Under it, appellee was enabled to secure cars and car parts and became entitled to a bonus, on cars sold in its territory, that increased in percentage with the number of cars sold in the 12-month period. Such contract provided that it could be cancelled by either party by giving notice in writing of intention to cancel 30 days before the proposed date of cancellation. It also contained the following language:

"No change, addition or erasure of any printed portion of this agreement (except the filling in of blank lines) shall be valid or binding upon either party. It is declared by both parties that there are no oral or other agreements or understandings between them affecting this agreement or related to the sale or servicing of new Buick motor vehicles, chassis, parts, or accessories. This agreement

supersedes and cancels all previous agreements between the parties hereto."

Late in September of 1928, appellee concluded to cancel the contract. Two of its officers went to the head office of appellant at Lincoln, Nebraska, and discussed the matter with the officer of appellant, with whom the former contracts between appellant and appellee had been negotiated. What took place at such conference is the subject of this suit. For the purpose of the present discussion, we will set forth appellee's version of the matter. Upon being advised of appellee's intention to cancel the contract, the officer, before referred to, asked that appellee continue the business until a new distributor could be found to take over the territory, and agreed that, if appellee would continue its business, the bonus paid to it would not be less than $2,500. In this conversation it was agreed that notice of cancellation should not be served and that the relations between the parties should continue under the agreement that the bonus would not be less than $2,500.

This action was brought to recover the bonus in the sum of $2,500, and appellee pleaded the oral agreement above set forth, and was permitted to introduce evidence to prove it. Appellant's complaint in relation to these matters is that the written contract could not be superseded by the oral agreement, and that evidence of such oral agreement was improperly admitted. The language of the contract, quoted above, purports to prohibit only changes in the wording of the contract prior to the execution of the writing as a contract, and antecedent or contemporaneous extraneous agreements and understandings which might otherwise be urged as modifying the provisions of the contract. Assuming that the language is thus effective, it does not purport to take away, nor could it take, from the parties the right to subsequently modify the contract by mutual agreement. D. M. Osborne & Co. v. Backer, 81 Iowa 375, 47 N. W. 70; Esterly Harvesting Mach. Co. v. Bemis, 93 Iowa 398, 61 N. W. 980. The incorporation in the contract of a provision by virtue of which either party might terminate the contract, by pursuing the method pointed out, does not take away the right of the parties to terminate the contract in any other way or to supersede it with another contract by mutual agreement. There is no restraint on the right of parties to cancel a contract by mutual agreement, where rights of third parties have not intervened. Wilson v. Holub, 202

Iowa 550, 210 N. W. 593, 58 A. L. R. 646. It follows that evidence of the oral agreement was properly admitted.

III. The trial court instructed the jury in relation to the binding effect of a contract made by an agent, within the scope of his apparent powers. No complaint is made of the form of the instruction, but it is contended that there was no evidence to support a finding that the agent, with whom appellee dealt, had, or apparently had, power to make the alleged oral agreement. The testimony in relation to the power, real and apparent, of the agent is too lengthy to permit its being incorporated herein. We are of the opinion that the court properly submitted to the jury the question of the binding effect of the acts of the agent in making the agreement. It appears without dispute that the relations between appellant and appellee had extended over a period of at least ten years. The bonus feature of the relations between the parties seems to have been a matter of annual agreement. Such agreements were negotiated between this agent and appellee. The written contracts were signed by the president of appellant company, but there is nothing in the record to suggest any limitation on the power of the particular agent to make contracts in relation to the payment of bonuses. This agent had a private office in the main office of the company, in which the particular oral agreement was made. He had negotiated previous bonus contracts with appellee. He had charge of securing local distributors. The oral contract was a part of a plan to maintain service in the territory involved, pending the procurement of a new representative in Fort Dodge. There is nothing in the record from which it can be said, as a matter of law, that the oral contract was entered into by him in excess of the authority which appellant had recognized as being his. The validity and binding force of the contract was a jury question.

It is said that the court improperly admitted evidence of the oral agreement, because there was no proof of the power of the agent to bind appellant by such contract. Under the record, the extent of the agent's power was a jury question. The trial court properly required the jury to first find that such agent had power to bind his company by such contract, before permitting appellant to be bound by his agreement.

IV. Appellee made an assignment for the benefit of creditors some time before the trial of the case began. After some testimony had been taken, a motion was made to substitute the assignee

as party plaintiff. Objection was made to this by appellant, and, upon the motion being sustained, appellant asked that the jury be discharged and the case continued. The court overruled this motion. Appellant does not contend that the assignee could not have been properly substituted if application had been timely made, but does contend that the substitution could not be made during the progress of the trial. Appellant argues, and not without merit, that the identity of the plaintiff should be known at the time of the selection of the jurors, in order that prospective jurors might be examined in regard to their relations with the substituted party, and challenges for cause made in proper cases, and peremptory challenges exercised as circumstances might dictate. Appellant cites the cases of Lloyd v. Rosenthal (Sup.) 180 N. Y. S. 30, and Luria v. Newman (Sup.) 199 N. Y. S. 21, but such cases do not aid us in our inquiry. The substituted parties did not stand in the place of the original parties. The substitutions made would have been improper at any time. It cites the case of Skews v. Dunn, 3 Utah 186, 2 P. 64, but in that case the determination of the question is decisively affected by the holding of the court that the substitution could only be granted on condition that the wife of the original plaintiff should not testify upon the trial of the case; she being incompetent to testify for the original plaintiff. It is to be noted also that the substitution of parties plaintiff was not made during the trial of the case, but was made pending trial, after appeal from a justice court.

Appellant also cites Ferry v. Page, 8 Iowa 455; Fannon v. Robinson, 10 Iowa 272; Emerson v. Miller, 115 Iowa 315, 88 N. W. 803; Kringle v. Rhomberg, 120 Iowa 472, 94 N. W. 1115; and Mayo v. Halley, 124 Iowa 675, 100 N. W. 529, as sustaining its contention that the substitution must be made before the trial is commenced. Without considering each case in detail, it may be said that the cases establish the rule that substitution of parties plaintiff is proper but not necessary in cases such as the one at bar. Nothing is said in any of the cases concerning when the substitution must be made. The general rule seems to be that, in a proper case, the substitution may be allowed at any time. 47 C. J. 162, section 299. It is conceded by both parties that, under the provisions of Code, section 10991, a substitution of the assignee as plaintiff could properly be ordered *at the right time*. In view of the fact that the substitution of the assignee as plaintiff was not necessary to the maintenance of the action, the application for substitution might

properly have been denied. It is apparent then that the matter of permitting substitution was discretionary with the court. There is no showing of any actual prejudice resulting to appellant from the substitution of the assignee as plaintiff. It is suggested by appellant that prejudice must be presumed from the fact that it had no opportunity to examine the jurors concerning the relations existing between them and the assignee, as a basis for challenge. Without minimizing in any way the value of the rights of parties to examine jurors in relation to their relationship to the parties, and their interest in the subject-matter of the trial, we cannot say that a change cannot be made in the parties to the suit, during the trial, without presumption of prejudice arising, on account of the inability of the parties to examine the jurors concerning their connections with the new parties.

In the case of Hook v. Garfield Coal Co., 112 Iowa 210, 83 N. W. 963, 966, a motion was made by heirs of a decedent, in a suit commenced by the administrator of the decedent to recover damages to land owned by decedent, that they be substituted as parties plaintiff. This motion was made after the trial had been in progress for some little time, and it rather appears just before a motion for a directed verdict was made by the defendant. The motion to substitute was overruled. In that case we said:

"Again, to save the action from abating, plaintiffs' attorneys who represented the heirs asked that the heirs be substituted as plaintiffs before the defendant's motion to direct was filed. This, although discretionary with the court, might well have been allowed; and, while we would not reverse for this ground alone, we think it the better practice to allow such amendments or substitutions."

The case has features which, in a measure, differentiate it from the case at bar, but it is authority for two propositions, which are controlling of the question under consideration. The first is, that a motion for substitution may be made during the trial, and the second is, that the motion is addressed to the sound discretion of the court. If prejudice were presumed, from the inability of the parties to challenge interested jurors, the court could have no discretion in the matter. It would be imperative that the motion be overruled. In the absence of a presumption of prejudice and any showing of actual prejudice, we are forced to the conclusion that

the court did not exceed proper discretion in permitting the substitution and in overruling the motion to discharge the jury.

The foregoing discussion, in effect, disposes of all assignments of error. The judgment appealed from is affirmed.

KINDIG, C. J., and ALBERT, DONEGAN, STEVENS, KINTZINGER, and ANDERSON, JJ., concur.

EVANS, J., dissents.