16826

INDUSTRIAL EQUIPMENT CO. v. MONTAGUE
(80 S. E. (2d) 114)

512

*Messrs. Robinson, Robinson & Dreher,* of Columbia, and *Messrs. Nash & Wilson,* of Sumter *for Appellant,*

*Messrs. Lee & Moise,* and *George D. Levy,* of Sumter, *for Respondent,*

*Messrs. Robinson, Robinson & Dreher,* of Columbia, and *Messrs. Nash & Wilson, of Sumter, in reply, for appellant,*

January 27, 1954.

STUKES, Justice.

Industrial Equipment Company of Sumter was formerly a partnership composed of respondent, his son and E. L. Freeman. The business was incorporated early in 1946 and the three former partners were the sole stockholders and in the same proportions that they had owned the partnership, which was forty-five per cent by the elder Montague (respondent) who was president, forty-five per cent by Freeman who was treasurer and general manager, and ten per cent by the younger Montague who was secretary. It was thus a "close corporation" in the popular sense of that term; cases defining such are found in 7A Words and Phrases, p. 41, and in the footnote to the text definition in 14 C. J. S., p. 1276. At the end of 1950 Freeman and his associates acquired the stock of the Montagues, after which the latter retired from the corporation.

This action was commenced in January, 1952, upon a complaint which alleged for a first cause of action that during the period from July, 1946, until December, 1950, respondent converted to his own use "bonus volume checks" issued to the corporation by International Harvester Company and by United States Rubber Company aggregating over $18,000.00; for a second cause of action that during the same period respondent drew $18,000.00 from the cor-

poration as salary, which was not authorized, incurred personal indebtedness to the corporation of $380.06 for merchandise, which has not been paid, caused payment of unauthorized salary of $175.00 to his son-in-law, and sold to the corporation used automobiles at prices exceeding their real value to the extent of $900.00. Judgment was demanded for the total of the stated amounts.

Respondent alleged in his answer that the checks were cashed by him upon the suggestion of Freeman and the proceeds divided among the stockholders of the corporation in the proportion of their stockholdings, which had been the practice of the partnership for the four years prior to its incorporation, except that one 1950 check in the amount of $2,586.22 was used in part payment of a note of the corporation to a local bank; it was also alleged that respondent received no salary from the corporation; further that he ran an account with the corporation which he paid monthly but if he is additionally indebted in that manner, he stands ready to pay; overpayment of salary to his son-in-law, alleged in the second cause of action of the complaint, was denied, as was the sale of automobiles to the corporation at excessive prices.

It is unnecessary for the purpose of the appeal to discuss the testimony which was adduced upon trial before a jury, except to say that that of Freeman, on the one hand, and respondent and his son on the other, was in direct conflict. The verdict and judgment are the solution by the jury of the controlling issues of fact. It found in favor of respondent on the first cause of action and upon the issue of the alleged salary payments to respondent which were referred to in the second cause of action.

At the close of the evidence appellant moved as follows for direction of the verdict:

"We would like to move for a directed verdict on the first cause of action, upon the ground that the admitted evidence shows that these checks totaling some eighteen or nineteen thousand dollars belonged to the Industrial Equipment Com-

pany, and were converted by the defendant B. L. Montague when he cashed the checks and did not pay any portion of it into the plaintiff corporation.

"Now, in connection with the account of the $380.00, I don't believe that there is any appreciable, any jury issue left in that. Your Honor held that we could only offer the items which the particular witness identified, those aggregated fifty or sixty dollars, and there is no contradiction of his testimony, and we believe we are entitled to a directed verdict for whatever that amount was, but under Your Honor's ruling we can't recover the rest of that account; I think it would be desirable to eliminate that from the jury's consideration.

"Now, on the question of the automobiles, there is a jury issue, and I make no motion on that.

"With regard to the salary, I submit to you that the general manager gave him notice that his service be terminated on the 30th of November, he had fifteen days' notice. The contract calls for five days' notice, and he cannot collect for half of December, and we are entitled to collect on that small item."

The motion was refused and all of the issues made by the pleadings were submitted to the jury which returned verdict for appellant in the amount of $756.35. There was thereafter no motion thereabout.

The appeal is upon two exceptions, the first of which imputes error in the refusal of the motion for direction of verdict in favor of appellant upon the first cause of action; and, the second, that the court erred in instructing the jury, in effect, that appellant was not entitled to recover on the first cause of action if they found that the respondent paid the proceeds of the bonus volume checks to the three stockholders of the corporation, who were its officers, as salary or wages.

Respondent insists that the appeal should be dismissed because the verdict was in favor of appellant which made no motion in the trial court for new trial on the ground of in-

adequacy of the verdict or for the correction of it, in the absence of which appeal will not lie from a favorable verdict. Principally relied upon for this position is *Wilson v. Southern R. Co.*, 123 S. C. 399, 115 S. E. 764. However, it is so plain that the judgment should be affirmed upon the merits we pass over, without deciding, this procedural question.

Whether or not the checks, which were the property of the corporation, were cashed by respondent and the proceeds divided *pro rata* among the stockholders was the controlling issue of fact which arose out of the first cause of action, as already pointed out, and the jury found against the testimony of Freeman, who denied knowledge even of the existence of the checks. The court instructed the jury to the effect that respondent committed no wrong if he cashed the checks and distributed the proceeds to the stockholders of the corporation, who were also all of its officers and directors, as salary or wages, despite the lack of formal corporate action, directors' meetings and minutes; but that respondent would be liable if the distribution of the proceeds of the checks was in the nature of a dividend. In the latter respect we think that the court erred and instructed the jury more favorably to appellant than it was entitled. Formal directors' meetings and minutes are not indispensable to corporate action in all cases. *Alderman v. Alderman*, 178 S. C. 9, 181 S. E. 897, 105 A. L. R. 102. The following is from 2 Fletcher, Corporations, 177, Sec. 395: "If the directors own all of the stock, a conveyance, mortgage or contract authorized by them when not assembled at a meeting is valid * * *," citing cases in the footnotes and in the cumulative supplement. See also 13 Am. Jur. 909, Corporations, Sec. 948; and 19 C. J. S., Corporations, § 751, p. 96.

The funds were the property of the corporation and the recipients, in the light of the verdict, were, as all of the stockholders, the real owners of the funds, in the proportion of their stockholdings, absent the claims

of creditors of the corporation or other third persons, as here. Undoubtedly, corporate directors are at least quasi-trustees in their dealings with the property of their corporation and the relation is fiduciary in nature. *Gilbert v. Mc-Leod Infirmary,* 219 S. C. 174, 64 S. E. (2d) 524, 24 A. L. R. (2d) 60. But here the directors were also all of the stockholders in this private, business corporation, whence they may be said, for the purpose of this decision, to have been the corporation itself. In that light, the trust relation disappears because one cannot be a trustee of property for himself. *Lynch v. Lynch,* 161 S. C. 170, 159 S. E. 26, 80 A. L. R. 997. And it is presently immaterial, under the facts of this case, whether the distribution was intended to be in the nature of dividends or compensation for services. No dividends were paid by the corporation in the usual manner, nor were salaries paid to respondent or his son, but Freeman received a large salary.

Section 12-201 of the Code of 1952 prohibits the payment of dividends by a corporation unless they have been earned either currently or theretofore and paid out of undesignated surplus. The only reasonable inference from the evidence in this case is that the proceeds of the checks represented earnings of the corporation because the record discloses that respondent subsequently sold his stock to Freeman and his associates for four and one-half times its face or par value.

Appellant argues that any agreement of respondent and the other corporate officers and stockholders to cash and divide the proceeds of the checks as they did, according to the verdict, was void for illegality because it was an unlawful scheme to evade the payment of State and Federal income taxes, which the court will not countenance. *Pendarvis v. Berry,* 214 S. C. 363, 52 S. E. (2d) 705. In the first place, the point was not made or decided in the trial court; and, secondly, the court is not enforcing the agreement, but is leaving the parties thereto as it found them. Moreover, if the practice was to conceal income of the corporation and the stockholders, as appellant

contends, that was a fraud upon the State and Federal governments, not upon appellant who therefore cannot attack it on that ground; it was a beneficiary, under this theory, rather than a victim whom the court should aid. Applicable is the following excerpt from *Frank v. Frank's, Inc.,* 9 N. J. 218, 87 A. (2d) 724, 727, 32 A. L. R. (2d) 700: "The plaintiff stresses Frank's fraud in the formation of the corporation, but the fraud of Frank was not on the plaintiff but on his judgment creditor, Mahr, and he alone had the right to complain of it. That fraud, as the trial court properly found, gives the plaintiff no cause of action."

It should be added that respondent and his son testified that they later amended their personal income tax returns to the State and Federal governments and paid taxes upon the portions of the proceeds of the checks which they respectively received.

A case of considerable similarity is *M. Groh's Sons v. Groh,* 80 App. Div. 85, 80 N. Y. S. 438, 443, which was tried by jury and their verdict for defendant was upheld on appeal. From the opinion the following is taken: "As between the owners and holders of all the stock of the corporation, it must, in principle, follow that the members of such corporation, entitled to receive dividends, may agree among themselves, either by conversation or otherwise, to appropriate of the funds of the corporation a specified sum, as agreed upon, and distribute the same; and the stockholder, upon the receipt of it, will acquire good title thereto as against the other members of the corporation. It amounts to a mere division of the property by agreement of all the parties in interest, and, as between them, it is perfectly good, and may not be attacked, where the act does not impair the rights of third parties. * * * It only remains, therefore, to see if the evidence was sufficient (to establish that the division of the funds was agreed upon while the parties owned the stock of the corporation, which it was)." There the actual payment of the funds was after the control of the corporation had passed from the payees.

It must be concluded that the trial court properly refused to direct verdict for appellant on the first cause of action; and that appellant was not prejudiced by the instructions thereabout which were given to the jury. These conclusions dispose of the main appeal.

Appellant also appealed from the order of the trial judge settling the case for appeal. The order is affirmed for the reasons which are sufficiently stated in the following excerpt from it:

"In one of the exceptions the plaintiff says that a verdict should have been directed against the defendant for the $18,408.11 of so-called bonus checks. Ordinarily, when the question is whether a verdict should have been directed it is quite difficult to leave out any testimony which may have even a remote bearing on the issue. It is true that most of the testimony which the plaintiff desires to omit bears primarily upon the other cause of action, but I believe that all of the testimony has an indirect bearing upon the exception, since it shows how the corporation conducted its affairs, the authority granted to its officers, the actions taken without formal meetings of the board of directors, and without formal resolutions entered upon the minutes.

"I think that the Supreme Court should have the same broad picture and background of the company's method of taking corporate action which were presented to the Trial Judge."

The contents of the record, as first sought to be submitted, were somewhat reduced by the order, we think as much so as fairness to respondent permitted, in view of the nature of the appeal.

All exceptions are overruled and the judgment affirmed.

BAKER, C. J., TAYLOR and OXNER, JJ., and G. BADGER BAKER, A. A. J., concur.