154 So.2d 666

## NATIONAL UNION LIFE INSURANCE COMPANY

v.

## F. R. INGRAM.

6 Div. 735.

Supreme Court of Alabama.

June 13, 1963.

R. Macey Taylor, Birmingham, and Henry Heller, Montgomery, for appellant.

312

Kingman C. Shelburne and F. R. Ingram, Birmingham, for appellee.

LAWSON, Justice.

Service Life and Health Insurance Company and F. R. Ingram entered into a contract on June 15, 1954, wherein Ingram as "General Agent" agreed to perform certain managerial duties for Service Life. In consideration for the performance of those duties Service Life agreed to pay to Ingram ten per cent of the gross receipts of Service Life each month thereafter for twenty years beginning on January 1, 1954, and ending on December 1, 1973. The contract provided, among other things, that the commissions therein provided for should be a first lien on the gross receipts of Service Life.

On November 1, 1954, National Union Life Insurance Company purchased all of the business of Service Life and on the same day purchased Ingram's General Agent's contract with Service Life in order that it could be cancelled and annulled. The contract between Ingram and National Union wherein Ingram transferred, sold, assigned and conveyed unto National Union all of his right, title and interest in and to his General Agent's contract with Service Life, provided:

"1. National Union Life Insurance Company shall pay to F. R. Ingram on the first day of each month hereafter for so long as said F. R. Ingram shall live, but in any event for a period of eight years from the date hereof, one per-centum (1%) of the gross monthly premium income realized by National Union from all hospitalization, surgery and medical insurance policies, commonly referred to as 'Hospitalization Business' in force in the State of Alabama, up to $100,000 per month gross premium income but not less than $200 per month, one-half of 1% on the next $100,000 of gross premium income in the State of Alabama, and one-fourth of 1% on the gross premium income in said State in excess of $200,000 per month, not to exceed $2,500.00 per month in accordance with the attached schedule.

"2. Said commission shall be paid by National Union to said Ingram on the first day of each month hereafter beginning December 1, 1954.

"3. Should Ingram die prior to October 31, 1962 (eight years from the date hereof) the remaining payments due from the date of his death to October 31, 1962, shall be paid to Ingram's heirs, personal representative, or assigns.

"4. The commissions herein provided for shall be a lien upon the gross premium receipts of National Union realized from Hospital business in the State of Alabama each month hereafter during the term of this agreement.

"5. This agreement shall be fully assignable but no assignment hereof shall be binding on National Union until thirty days after written notice of assignment by registered mail has been received by National Union.

"6. Payments of commissions hereunder, at all times hereafter during the lifetime of said Ingram, or until October 1, 1962, in any event shall be not less than $200 per month and shall not exceed $2,500 per month.

"7. This agreement shall enure to the benefit of the parties hereto, and to their respective heirs, personal representatives, successors or assigns."

On June 7, 1955, National Union paid Ingram the sum of $1,000 under the contract of November 1, 1954, and made another payment of $2,500 on October 1, 1955.

National Union made no further payments to Ingram under the contract of November 1, 1954, prior to the time it sold all of its Alabama "Hospitalization Business" to United Security Life Insurance Company in January of 1957.

Neither National Union nor United Security would thereafter make any payments to

Ingram under the said contract. Hence Ingram on January 30, 1959, instituted this suit against National Union and United Security claiming damages for breach of the contract of November 1, 1954. The complaint was amended several times. By one of the amendments United Security was eliminated as a party defendant. The remaining defendant, National Union, filed a number of pleas to which Ingram filed replications.

The case came on for trial before the court without a jury. A judgment was rendered in favor of Ingram in the amount of $9,438. National Union filed a motion for new trial, which was overruled. National Union has appealed to this court.

The record is voluminous, complex and confusing.

Shortly after United Security purchased the "Hospitalization Business" from National Union, Ingram advised United Security that he claimed an interest in that business by virtue of his contract of November 1, 1954, with National Union. At the time Ingram asserted this claim to United Security, that company still owed National Union approximately $5,000 on the purchase price of the "Hospitalization Business." United Security refused to make any payments to Ingram, but paid the amount still due on the purchase price into the Circuit Court of Jefferson County, in Equity, under an interpleader, naming Ingram and National Union as respondents. The trial of the interpleader action resulted in a decree to the effect that Ingram did not have a lien on the money interpleaded, which was ordered paid over to National Union.

■ National Union asserts that the decree in the interpleader action is res judicata of the suit at bar. We do not agree. The claim of Ingram to a lien on the money interpleaded was "dismissed without prejudice." The decree in the interpleader action did not undertake to adjudicate the rights of Ingram under his contract with National Union. The decree contains the following language:

"That the claim of Respondent, F. R. Ingram, as shown by the proof, is, that of a creditor merely and would entitle said respondent to subject this fund to the satisfaction of his claim only as a result of appropriate legal proceedings on the law side of this Court."

We hold that the decree in the interpleader action was no bar to the maintenance of the present suit. See Lang's Heirs v. Waring, 25 Ala. 625; Collins v. Smith,. 155 Ala. 607, 46 So. 986; Ex parte Dunlap,. 209 Ala. 453, 96 So. 441.

The appellant, National Union, insists. that the contract of November 1, 1954, here sued upon, is like unto a contract for employment for life and is, therefore, unenforceable in that it is not supported by an independent valuable consideration and the persons who purported to act on behalf of National Union had no authority to bind it.

In regard to a contract for life employment, the majority rule seems to be that two elements must be shown to exist before such a contract can be held enforceable.. First, it must appear that there was a consideration of substantial value, independent of any service to be performed, and in making that determination the courts inquire into the actual value of the considera.·tion. Second, where the promisor is a corporation, in the absence of ratification or estoppel, it must appear that the individual or individuals who acted on behalf of the corporation had actual, as opposed to implied, authority to bind the corporation.. Alabama Mills v. Smith, 237 Ala. 296, 186 So. 699; Chesapeake & Potomac Tel. Co. of Baltimore City v. Murray, 198 Md. 526, 84 A.2d 870; Heaman v. E. N. Rowell Co., 261 N.Y. 229, 185 N.E. 83; Carney v. New York Life Ins. Co., 19 A.D. 160, 45 N.Y.S. 1103, affirmed 162 N.Y. 453, 57 N.E. 78; Rennie v. Mut. Life Ins. Co. of N. Y., 1 Cir., 176 F. 202; Beers v. New York Life Ins. Co., 66 Hun, 75, 20 N.Y.S. 788, 49 N.Y.St. Rep. 182; Kolodney v. Kolodney Bros., Inc., 21 Conn.Supp. 308, 154 A.2d 531; Lewis v.. Minnesota Mut. Life Ins. Co., 240 Iowa

1249, 37 N.W.2d 316; Horvath v. Sheridan-Wyoming Coal Co., 58 Wyo. 211, 131 P.2d 315; Plowman v. Indian Refining Co., D.C., 20 F.Supp. 1; 35 A.L.R. 1432; 135 A.L.R. 646.

The contract of November 1, 1954, is not a contract of employment. It does not contemplate that Ingram is to render any services to National Union.

But we will assume without deciding, for the purpose of a disposition of this case, in view of the insistences made by appellant, that the rules applicable to contracts for life employment have application to the contract here involved.

The consideration for the promise made by National Union was the surrender by Ingram of his contract with Service Life so that it could be cancelled, thereby eliminating any claim which Ingram might have against National Union as a result of his contract with Service Life.

National Union argues that the surrender of his Service Life contract by Ingram was not a consideration of substantial value for the contract between National Union and Ingram, in that the Service Life contract was void because Ingram, in effect, contracted therein with himself in that he executed the contract on his own behalf as an individual and on behalf of Service Life as its president without the approval of the board of directors of Service Life or its stockholders.

■ The general rule is that contracts executed on behalf of a corporation by an officer who is also the opposing party to the contract or whose interests in the contract are adverse to those of his corporation are not void but merely voidable at the instance of the corporation or its stockholders. O'Conner Mining & Mfg. Co. v. Coosa Furnace Co., 95 Ala. 614, 10 So. 290; Ingalls Iron Works v. Ingalls Foundation, 266 Ala. 656, 98 So.2d 30; Mobile Land Improvement Co. v. Gass, 142 Ala. 520, 39 So. 229; James Supply Co. v. Frost, 214 Ala. 226, 107 So. 57; Fletcher, Cyclopedia, Cor-

porations, Permanent Ed., Vol. 3, §§ 922 and 924. The right of a creditor to impeach such a transaction depends upon its fraudulent character. James Supply Co. v. Frost, supra; O'Conner Mining & Mfg. Co. v. Coosa Furnace Co., supra; Force v. Age-Herald Co., 136 Ala. 271, 33 So. 866.

. Ingram was in effect the sole owner of Service Life. He owned all of the ten thousand shares of the capital stock except a few qualifying shares which were held by members of his family and employees, who were under his control.

In Philadelphia Life Ins. Co. v. Crosland-Cullen Co., 4 Cir., 234 F.2d 780, the court quoted with approval from Ballentine, Law of Corporations, p. 296, § 126, as follows:

> "The contracts of the sole shareholder, or all the shareholders, will bind the corporation in modern law, although not made by the authority of the board of directors, since they are the only persons beneficially interested, aside from corporate creditors. If they do not distinguish between corporate business and their individual affairs, or waive formalities established for their benefit, there is no reason why the courts should insist on such formalities. The contract of the owners of all shares will be regarded as binding on the corporation if so intended."

See also Salmon v. Fitts, 5 Cir., 67 F.2d 681; In re American Range & Foundry Co., 8 Cir., 22 F.2d 558; Industrial Equipment Co. v. Montague, 224 S.C. 510, 80 S.E.2d 114.

■ In view of the foregoing, we hold that the contract between Ingram and Service Life is not void because executed by Ingram on behalf of the corporation on the one hand and by him in his individual capacity on the other. We also hold that such contract is not voidable at the instance of National Union, which was not a creditor of Service Life.

■ We understand National Union to contend that the contract between Ingram

and Service Life terminated when Service Life sold its "Hospitalization Business" to National Union and that, therefore, Ingram did not have an enforeceable claim against National Union, the surrender of which constituted a valuable consideration for National Union's contract with Ingram. We do not agree. The reinsurance agreement, that is, the instrument whereby Service Life sold and National Union bought Service Life's "Hospitalization Business," shows on its face that National Union recognized Ingram's rights under his contract with Service Life. The reinsurance agreement contains this language:

"That there are no outstanding contracts entitling any agent or other person, firm, or corporation, to renewals, commissions or other interest in the future premium income of Service Life *except contracts of F. R. Ingram, Boris Pavlov, and J. Paul Ward, which contracts are this day being assigned to National Union.*" (Emphasis supplied.)

The reinsurance agreement also provided that National Union assumed and agreed to pay and service all insurance, debts, and claims arising out of Service Life's business.

It seems clear from the record before us that the parties recognized that Ingram's contract with Service Life constituted an outstanding claim against National Union.

National Union also asserts that Ingram's claim against Service Life was valueless. We disagree. We will not undertake to set out in detail the evidence as it relates to the financial position of Service Life at the time it sold its business to National Union. Suffice it to say that there were tendencies of the evidence going to show that through Ingram's efforts Service Life had become a going concern with valuable contracts entered into with a number of Alabama hospitals.

There are tendencies of the evidence to the effect that Service Life owed Ingram approximately $20,000 on the day that Service Life sold its "Hospitalization Business" to National Union and on the day that Ingram entered into his contract with National Union, which is the subject matter of this litigation.

■ By assigning his contract with Service Life to National Union, Ingram gave up a valuable legal right which constitutes sufficient consideration to support a unilateral contract. Williston on Contracts, Vol. 1, §§ 13 and 102.

We hold that the evidence fully supports the finding that there was a consideration of substantial value for the promise made by National Union in its contract with Ingram under date of November 1, 1954.

■ We come now to National Union's insistence that the individuals who acted on behalf of National Union in the execution of the Ingram contract did not have actual authority to bind the corporation to pay Ingram a certain percentage of the gross monthly premium income of National Union during Ingram's lifetime.

The contract of November 1, 1954, between Ingram and National Union was executed on behalf of National Union by its president, Paul J. Riddle, whose signature was attested by C. J. McCann, Jr., the assistant secretary of National Union. Riddle and McCann were members of the finance committee of National Union. The initials of other members of that committee were also affixed to the contract. The by-laws of National Union gave to the finance committee "all the powers of the board of directors in the management and direction of the affairs of the company in all cases in which specific directions shall not have been given by the board of directors." It could well be argued that the provisions of the by-laws just quoted were sufficient to give the finance committee the authority to enter into the contract in question, but we lay aside a decision on that matter, for the record shows beyond peradventure that the board of directors of National Union at its annual meeting held in February of 1955 formally adopted, approved and ratified all

the acts and proceedings of the finance committee and of the officers of National Union for the year in which the Ingram-National Union contract was executed.

In Lewis v. Minnesota Mut. Life Ins. Co., supra, it is said in regard to a contract of employment for life:

"There is no lack of authority when there has been approval or specific ratification by authorized officers, and to sustain this proposition see Fletcher v. Agar Mfg. Corp., [D.C. 45 F.Supp. 650], supra, involving approval, and of ratification in Baltimore & Ohio R. Co. v. Foar, 7 Cir., 84 F.2d 67, White v. Elgin Creamery Co., [108 Iowa 522, 79 N.W. 283] supra, and Webster County Buick Co. v. Nebraska Buick Automobile Co., [216 Iowa 485, 249 N.W. 203] supra." (237 Ala. 296, 37 N.W.2d 328.)

See also Pullman Co. v. Ray, 201 Md. 268, 94 A.2d 266; Chesapeake & Potomac Tel. Co. of Baltimore City v. Murray, supra; Beall v. Morgantown & Kingwood R. Co., 116 W.Va. 515, 182 S.E. 295. There can be no question of knowledge on the part of the board of directors of the execution of the contract here involved, for the board of directors was composed in large part of the members of the finance committee, who were in all respects thoroughly familiar with the execution of the contract.

■ National Union contends that its contract with Ingram is void as against public policy in that it purports to bind future boards of directors and takes out of their hands the power to manage and direct the affairs of the corporation. We do not agree. In Alabama Mills v. Smith, supra, where this court was dealing with a contract of employment for an indefinite period of time, we said:

"When a person purchases such a contract for a valuable consideration other than the service to be rendered for which he is to receive compensation, there is no reason to suppose that it is

not as binding as any other contract thus supported. * * *" (237 Ala., 299, 186 So. 702)

See Gerard B. Lambert Co. v. Fleming, 169 Ark. 532, 275 S.W. 912; Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112; Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc., D.C., 178 F.Supp. 655; Schrimplin v. Farmers' Life Association, 123 Iowa 102, 98 N.W. 613.

We find no prejudicial error in either of the two rulings on the exclusion of evidence which are referred to in appellant's brief.

The judgment of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.