What constitutes sufficient consideration to prevent a contract of permanent employment from being terminable at the will of the employer? That is the sole issue presented by this appeal.
Plaintiff/appellant, Dorothy Mae Scott, filed a suit against several doctors and Mobile Anesthesiologists, an unincorporated association, in which she claimed that they had offered her permanent employment if she would resign from her employment with two other doctors.[1]
As is apparent from the allegations of the complaint, which are set out in the footnote, *Page 792 
the plaintiff claimed that the defendants offered her permanent employment, that she accepted it, and that as consideration for the contract of permanent employment, she resigned her previous employment, and that the defendants had knowledge that she would resign her previous employment.
Plaintiff relies almost entirely upon the case of AlabamaMills, Inc. v. Smith, 237 Ala. 296, 186 So. 699 (1939). Because many of the principles of law relating to contracts of permanent employment are summarized in the Alabama Mills case, we set out extensively portions of the opinion in that case:
 "Appellant contends that a contract by which plaintiff should have the privilege of working for defendant at the stipulated amount of wages as long as he wanted to do so, was too indefinite to be operative, except for the services which were rendered and without mutuality; and if otherwise valid, though its terms are denied, as plaintiff contends they were, that they were made by one without sufficient authority to bind appellant to that extent.
 "With respect to the first contention, we will endeavor to find an exact meaning *Page 793 
of such a contract as that stated in plaintiff's testimony. A leading case upon that subject is Carnig v. Carr, 167 Mass. 544, 46 N.E. 117, 35 L.R.A. 512, 57 Am.St.Rep. 488. It was said that what they meant by a permanent employment was so long as defendant was engaged in the same nature of business and needed the service of such an employee, and plaintiff was able and willing to do it satisfactorily and gave no cause for his discharge. So construed, it was said the contract was capable of enforcement. We have had occasion to consider contracts of a similar sort, but which differ in a material respect. Our case of Peacock v. Virginia-Carolina Chemical Co., 221 Ala. 680, 130 So. 411, reviews many of the authorities on the subject. The general rule is there referred to that an indefinite hiring is presumed to be at the will of either party, in the absence of custom or facts showing a contrary intention. The question there, as in many cases, was whether an employment is such as that compensation which is payable by the week, or month or year, implies a minimum period equal to such as is thus named. Clark v. Ryan, 95 Ala. 406, 11 So. 22; National Life Ins. Co. v. Ferguson, 194 Ala. 658, 69 So. 823.
 "Undoubtedly a contract of employment which is in a true sense indefinite and without stipulation for an implied minimum period, is at the will of either party. 18 R.C.L. 508, section 19, and page 509, section 20; Howard v. East Tennessee, V. G.R. Co., 91 Ala. 268, 8 So. 868; Arentz v. Morse Dry Dock Repair Co., 249 N.Y. 439, 164 N.E. 342, 62 A.L.R. 231.
 "But if the terms of the employment are that the period of service shall be permanent, or as long as the employee wishes, the status is not so much that the service is for an indefinite period, but the question is whether the contract as made for a period of time to be fixed by the will of the employee is mutual in its operation and based upon a sufficient consideration. With respect to that situation, 18 R.C.L. 510, states the rule as follows: `Under some circumstances, however, "permanent" employment will be held to contemplate a continuous engagement to endure as long as the employer shall be engaged in business and have work for the employee to do and the latter shall perform the service satisfactorily. This seems to be the established rule in case the employee purchases the employment with a valuable consideration outside the services which he renders from day to day. Not infrequently contracts by railroad companies to furnish "steady and permanent" employment to employees in consideration of the relinquishment of claims by the employees against the companies have been construed to show an agreement on the part of the company to furnish the employee with employment as long as the latter is able, ready and willing to perform such services as the company may have for him to perform. The fact that the employee has a right to quit work at his option does not give the employer a reciprocal right to terminate the contract at pleasure, since the employee, by releasing his claim, has paid a valuable consideration for the option.'
 "It is likewise so analyzed in Rape v. Mobile O.R. Co., 136 Miss. 38, 100 So. 585, and in the annotation in 35 A.L.R. 1422 et seq.; Roxana Petroleum Co. v. Rice, 109 Okla. 161, 235 P. 502; notes in 62 A.L.R. 234; Fisher v. John L. Roper Lumber Co., 183 N.C. 485, 111 S.E. 857, 35 A.L.R. 1417; Evans v. Cincinnati, S. Mobile Ry. Co., 78 Ala. 341.
 "When a person purchases such a contract for a valuable consideration other than the service to be rendered for which he is to receive compensation, there is no reason to suppose that it is not as binding as any other contract thus supported. If he has purchased a contract by which his employer leaves the period of duration to him, it resembles the purchase of other sorts of option rights, subject to the limitation impliedly included that the employer shall continue in such business and need the things to be done, which the *Page 794 
employee is to do. In other words, such employee must have a preference over others in doing that sort of work.
 "The nature of consideration which will uphold such a contract is right generally discussed in the cases above cited. They lead to the conclusion that if the hirer knows that the person being employed then has employment, and that he is giving it up to engage in his new work under the new contract, a valuable consideration is shown." [Emphasis added.]
The defendants contend that the statement in Alabama Mills that ". . . if the hirer knows that the person being employed then has employment, and that he is giving it up to engage in his new work under the new contract, a valuable consideration is shown . . .," is dictum, and is "inconsistent with the holding which is evident from reading the case in its entirety." The defendants argue that Alabama Mills, "read in its entirety and interpreted according to the legal authority upon which it relies and subsequent statements of the Alabama Supreme Court," holds that something more than an employer's knowledge that an employee is relinquishing his former employment to engage in new employment is required to constitute consideration sufficient to render a contract for permanent employment enforceable.
This Court has had occasion to consider the question of permanent employment contracts on several occasions. The cases which discuss in some detail the principles of law regarding contracts of employment for an indefinite duration are: AlabamaMills, supra; United Security Life Insurance Co. v. Gregory,281 Ala. 264, 201 So.2d 853 (1967); National Union LifeInsurance Co. v. Ingram, 275 Ala. 310, 154 So.2d 666 (1963).
In United Security Life Insurance Co., this Court quoted the following passage from National Union Life Insurance Co.:
 "`In regard to a contract for life employment, the majority rule seems to be that two elements must be shown to exist before such a contract can be held enforceable. First, it must appear that there was a consideration of substantial value, independent of any service to be performed, and in making that determination the courts inquire into the actual value of the consideration. Second, where the promisor is a corporation, in the absence of ratification or estoppel, it must appear that the individual or individuals who acted on behalf of the corporation had actual, as opposed to implied, authority to bind the corporation. Alabama Mills [Inc.] v. Smith, 237 Ala. 296, 186 So. 699; Chesapeake Potomac Tel. Co. of Baltimore City v. Murray, 198 Md. 526, 84 A.2d 870; Heaman v. E.N. Rowell Co., 261 N.Y. 229, 185 N.E. 83; Carney v. New York Life Ins. Co., 19 A.D. 160, 45 N.Y.S. 1103, affirmed 162 N.Y. 453, 57 N.E. 78; Rennie v. Mut. Life Ins. Co. of N.Y., 1 Cir., 176 F. 202; * * * [further citations omitted].'"
This Court has said on at least three occasions that:
 "When a person purchases such [a contract of employment for an indefinite period of time] for a valuable consideration other than the service to be rendered for which he is to receive compensation, there is no reason to suppose that it is not as binding as any other contract thus supported. If he has purchased a contract by which his employer leaves the period of duration to him, it resembles the purchase of other sorts of option rights, subject to the limitation impliedly included that the employer shall continue in such business and need the things to be done, which the employee is to do."
United Security Life Ins. Co. v. Gregory, 281 Ala. 264, 266,201 So.2d 853, citing Alabama Mills, Inc. v. Smith, supra, 237 Ala. at p. 299, 186 So. at p. 702; National Union LifeInsurance Co. v. Ingram, 275 Ala. 310, 317, 154 So.2d 666, 672
(1963).
We are aware that some courts will not recognize that knowledge by the employer "that the person being employed then has employment, and that he is giving it up to engage in his new work under the new contract" is valuable consideration. Alabama does; therefore, the trial court erred *Page 795 
in granting defendant's motion to dismiss plaintiff's "fourth cause of action."
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] The allegations of the complaint, which the trial court dismissed for failure to state a claim, are as follows:
 "On or about January 1, 1970, the Defendants offered the Plaintiff permanent employment with the Defendants, and the Plaintiff accepted said employment, and the Plaintiff and the Defendants thereby made a contract for said employment, under the mutually agreed terms that the Plaintiff would then resign from the gainful employment she then had with Doctors Abel L. Johnson and Julia Box, hereinafter sometimes called "Johnson and Box," that the Defendants would employ the Plaintiff as a nurse-anesthetist for the Defendants for as long as the Plaintiff should wish to continue said employment with the Defendants, and that the Defendants would pay the Plaintiff compensation for her said employment with the Defendants, said compensation to consist of salary at the rate of one thousand dollars ($1,000) per month plus commissions at the rate of thirty percent (30%) of all sums charged to and collected from the Defendants' patients in all cases wherein the Plaintiff rendered services to those patients in the performance of the Plaintiff's said employment with the Defendants, said compensation to be paid the Plaintiff monthly throughout her said employment;
 "In return and as consideration for the aforesaid contract and for the Defendants' aforesaid promises of permanent employment and compensation therefor, the Plaintiff resigned her gainful employment by and with Johnson and Box, where she was gainfully employed at the time she and the Defendants made and entered the aforesaid contract;
 "When the Defendants made the aforesaid contract with the Plaintiff as aforesaid, the Defendants knew that the Plaintiff then had the aforesaid employment with Johnson and Box and that the Plaintiff would necessarily resign said employment with Johnson and Box to engage in the Plaintiff's new employment with the Defendants under the aforesaid contract made by the Defendants with the Plaintiff;
 "The Defendants' aforesaid knowledge that the Plaintiff would necessarily resign from her employment with Johnson and Box together with the Plaintiff's aforesaid actual resignation from said employment to engage in her new employment with the Defendants as aforesaid constitute the Plaintiff's consideration to the Defendants for the aforesaid contract and for the Defendants' aforesaid promises of permanent employment and compensation;
 "The Plaintiff faithfully performed her aforesaid employment with the Defendants from January 1, 1970, or thereabout until March 9, 1979, or thereabout, on which later date the Defendants breached the aforesaid contract by discharging the Plaintiff from her aforesaid employment with the Defendants without reasonable cause for such discharge and by terminating the payment of the compensation theretofore promised, as particularly stated herein, by the Defendants to the Plaintiff for such employment;
 "Before the Plaintiff's aforesaid discharge by the Defendants, the Plaintiff and the Defendants had mutually amended the aforesaid contract for permanent employment in the sole particular that the salary portion of the Plaintiff's aforesaid compensation was increased from one thousand dollars ($1,000) to twelve hundred dollars ($1,200) per month, and the Plaintiff and the Defendant had retained and continued all other terms of said contract and compensation in full force and effect;
 "Pursuant to the aforesaid contract for permanent employment, as amended as aforesaid, the Plaintiff was earning approximately twenty-seven hundred dollars ($2,700) per month from the Defendants at the time of her aforesaid discharge;
 "At the time of the Defendants' aforesaid breach of contract, the Plaintiff was ready, willing and able to continue performing her aforesaid employment with the Defendants pursuant to the aforesaid contract for 15 more years;
 "The Defendants' aforesaid breach of contract has damaged the Plaintiff by depriving her of the compensation due to accrue to her pursuant to the aforesaid contract following the date of the Plaintiff's aforesaid discharge from employment and cessation of compensation by the Defendants;
 "Throughout the time the Plaintiff performed her aforesaid employment with the Defendants as aforesaid, they failed to pay her all she was due in commissions accruing pursuant to the aforesaid terms of the aforesaid contract, and the Defendants refused to allow the Plaintiff to inspect the Defendants' records on the data from which the Plaintiff's said commissions were to be calculated, even though the Plaintiff duly demanded full payment of said commissions and inspection of said records;
 "WHEREFORE the Plaintiff demands an accounting by the Defendants and judgment against the Defendants, jointly and severally, in the sum of Seven Hundred Thousand Dollars ($700,000) as damages plus interest and costs of court."