PARKER, Justice.
John B. Simmons, Jr., appeals from a summary judgment entered in favor of Mike Ball. The trial court’s judgment permanently enjoined Simmons from enforcing the mortgage that gave rise to this controversy by foreclosing on the mortgaged property. We reverse and remand.

Facts and Procedural History

On May 10, 2005, two brothers, Kelly Andrew Ball (“Andy”) and Mike, organized a limited-liability company known as Hard Ball, LLC (“Hard Ball”), in which they were the sole members. Article VILa. of the articles of organization placed “[a]ll affairs, business, functions, and dealings of Hard Ball, LLC ... under the managerial control of the member: Andy Ball.” Article VILb. assumed that Article VILa. appointed Andy as the manager of Hard Ball, referring to “[t]he manager named in Article VII(a).” Andy’s managerial authority was specifically extended by Article VIII.c., which stated that “Andy Ball as a Member of Hard Ball, LLC ... has *833 been granted authority to sign any such documents, including but not limited to conveying, mortgaging, buying, selling and encumbering of real property”; however, Article VIII.c. did not refer to Andy’s status as manager of the limited-liability company.
Also on May 10, 2005, Andy and Mike executed an operating agreement. The operating agreement required the members of the limited-liability company, among other things, to “execute such documents and take such action as may be necessary to maintain the Company’s status as a limited liability company under the [Limited Liability Company] Act[, § 10-12-1 et seq., Ala.Code 1975,] ... and to carry out the business purposes of the Company.” The operating agreement also named Andy as the manager, registered agent, and organizer of Hard Ball.
Hard Ball’s sole business function was “flipping” houses; specifically, Hard Ball purchased houses with funds supplied by Mike; Andy then, after repairing and cleaning the houses, attempted to sell them for a profit. Among the houses purchased by Hard Ball was one located at 1128 Deatsville Highway, Millbrook, in El-more County (“the Deatsville property”). During the summer of 2006 there was a disagreement between Andy and Mike; Andy subsequently “disappeared for several weeks,” and Mike, acting on the advice of his lawyers, attempted to preserve Hard Ball’s assets by transferring them into his name. On August 1, 2006, Mike executed a deed on behalf of Hard Ball purporting to convey the Deatsville property to himself; he recorded that deed in the Elmore County Probate Office on August 4, 2006. He also executed and recorded deeds purporting to transfer to himself other real property owned by Hard Ball. In December 2006, Mike filed an application in the Autauga Circuit Court seeking the dissolution of Hard Ball.
In May 2007, the trial court entered the following notation on the case-action-summary sheet in the action seeking the dissolution of the limited-liability company: “Court directs that all LLC property be placed back in the LLC name — Only to be transferred by Court Order — All proceeds to be held in escrow pending order of this Court.” In response to the trial court’s order, Mike and Andy agreed that the deeds to the properties Mike had attempted to convey to himself would be signed, but not recorded, before finding a third-party buyer and obtaining authorization from the trial court to sell the properties. On July 23, 2007, Mike signed a deed conveying the Deatsville property to Hard Ball. When he signed the deed, Mike did not intend for the deed to be delivered or the property conveyed. However, a copy of that deed (stamped “COPY”) was given to Andy’s lawyer, who in turn gave it to Andy; on November 14, 2007, Andy recorded that copy as if it were the original deed.
On November 28, 2007, Simmons loaned Hard Ball $52,000 and in return received from Andy, acting as Hard Ball’s manager, a mortgage on the Deatsville property. In an affidavit attached to the mortgage, Andy assured Simmons that the property had been transferred from Mike to Hard Ball by the July 23, 2007, deed. When Hard Ball defaulted on the loan payments, Simmons attempted to foreclose on the Deatsville property. Mike learned of the mortgage on the Deatsville property on November 24, 2008, when he received a notice of that foreclosure. Mike immediately moved the trial court to join Simmons as a necessary party to the dissolution action. He also requested that the trial court stay the foreclosure proceedings. The trial court joined Simmons as a *834 defendant and stayed the foreclosure proceedings; thereafter, Simmons, Mike, and Andy each filed a motion for a summary judgment.
On August 28, 2009, the trial court entered a summary judgment in Mike’s favor, dissolving Hard Ball, disposing of its assets, and permanently enjoining Simmons from foreclosing on the Deatsville property. The trial court found “that the deed ... with the word ‘COPY’ in bold print at the top thereof was sufficient to put [Simmons] ... on notice of further inquiry as to the location of the original deed and the reason the original deed was not recorded.” Simmons appealed.

Standard of Review

“ ‘[0]n appeal a summary judgment carries no presumption of correctness,’ Hornsby v. Sessions, 703 So.2d 932, 938 (Ala.1997). ‘ “In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact” and whether the mov-ant was entitled to a judgment as a matter of law.’ Ex parte General Motors Corp., 769 So.2d 903, 906 (Ala.1999) (quoting Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988)). ‘Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.’ Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).”
Harper v. Coats, 988 So.2d 501, 503 (Ala.2008).

Discussion

Several issues are raised on appeal, but we need address only one. The dispositive issue in this case is whether the deed Mike executed on August 1, 2006, transferred ownership of the Deatsville property from Hard Ball to Mike.
Simmons argues that under §§ 10-12-21 and 10-12-23, Ala.Code 1975, a part of the Alabama Limited Liability Company Act, § 10-12-1 et seq., Ala.Code 1975, Mike acted without authority when he signed the August 1, 2006, deed as a member of Hard Ball because, Simmons says, Andy, as the manager of Hard Ball, was the only person who had the authority to transfer title to any of Hard Ball’s property. Simmons argues that Mike’s lack of authority to transfer title to any of Hard Ball’s assets makes the August 1, 2006, deed void. Thus, Simmons argues, title to the Deatsville property remained in Hard Ball and was never transferred to Mike.
As this Court has previously explained, “[l]ike corporations and limited partnerships, limited liability companies are creatures of statute.” Harbison v. Strickland, 900 So.2d 385, 389 (Ala.2004). Section 10-12 — 21(b)(1) provides, in relevant part, that when a limited-liability company’s articles of organization provide that management of the company is vested in a manager, then “[n]o member, acting solely in the capacity as member, is an agent for the limited liability company.” As we noted in Clement Contracting Group, Inc. v. Coating Systems, L.L.C., 881 So.2d 971 (Ala. 2003), when the articles of organization provide for a manager, even the sole member of a limited-liability company should sign documents “in his capacity as manager rather than in his capacity as member.” 881 So.2d at 974.
The reservation of authority to the manager or managers of a limited-liability company is even more explicit when the transfer of property of the limited-liability company is involved. Section 10-12-23, Ala.Code 1975, entitled “Limited Liability *835 Company Property,” provides in subsection (d):
“If the articles of organization provide that management of the limited liability company is vested in a manager or managers, title to property of the limited liability company that is held in the name of the limited liability company may be transferred by an instrument of transfer executed by any manager in the name of the limited liability company; but a member, acting solely as a member, shall not have that authority”
(Emphasis added.) Both §§ 10-12-21(b)(1) and 10-12-23(d) are applicable in this case.
Hard Ball’s articles of organization appointed a manager for the limited-liability company; that manager was Andy. Because Andy was the manager and Mike was only a member of Hard Ball, Mike had no authority to transfer the Deatsville property from Hard Ball to himself. The issue then is whether the August 1, 2006, deed executed by Mike without authority to do so is voidable at Hard Ball’s option but enforceable against Simmons and other third-party purchasers or simply void, having no legal effect on the title to the Deatsville property.
Simmons admits in his brief to this Court that “some deeds which were improperly executed [are] voidable rather than void,” including deeds that are “obtained through undue influence.” (Simmons’s brief, at 18.) Simmons goes on to argue, though, that “[n]o case or statutory support has been found for Mike Ball’s position which would contradict the plain meaning of the statute and the LLC organizational documents.” (Simmons’s brief, at 18.) Simmons’s assertion is correct; this is a question of first impression for this Court.
Mike compares the facts in this case to the transfer of property by a minor, noting that “[s]uch a transfer is not void, but only voidable at the instance of the minor.” (Mike Ball’s brief, at 28.) However, because he cites no authority in support of the bare analogy, we disregard that argument. “We have unequivocally stated that it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994).
Mike does direct this Court’s attention to cases holding that an instrument executed by an agent of a corporation who has a personal interest in the transfer is voidable by the corporation, but not by third parties. See Mike Ball’s brief, at 26-29, citing Mobile Land Improvement Co. v. Gass, 142 Ala. 520, 39 So. 229 (1904), and National Union Life Ins. Co. v. Ingram, 275 Ala. 310, 154 So.2d 666 (1963). Mike argues that this Court should apply a similar rule by analogy in this case.
Mike’s reliance on those cases is misplaced, however. In Mobile Land Improvement Co., the secretary of the corporation, H.R. Gass, participated in the corporate meeting authorizing the transfer of corporate property to him personally. Because the sale of that property created a conflict between his personal interest and the interests of the corporation, this Court concluded that the corporation could properly void the transaction and rescind the deeds giving Gass title to the property at issue. Specifically, this Court stated:
“ ‘ “Now the purchase of property by an agent or trustee, or by any person acting in a fiduciary capacity, is not void ab origine and absolutely. It is voidable only. It is made subject to the right of the principal or beneficiary, in a reason *836 able time, to say that he is not satisfied with it.” ’ ”
142 Ala. at 528, 39 So. at 232 (quoting other cases). Unlike Mike, who, as a member of the limited-liability company but not the managing member, lacked authority to act on behalf of Hard Ball, Gass’s status as an agent of the corporation and his resulting authority to transfer the property on behalf of the corporation was never in question.
Mike also cites National Union Life Insurance, in which F.R. Ingram, the sole shareholder of the corporation, signed a contract between himself and the corporation both on behalf of the corporation and in his individual capacity. This Court held that such a contract was voidable, but only by the corporation; a third party like National Union could not object to the conflict. 275 Ala. at 317, 154 So.2d at 670-71. Like Gass, however, and unlike the facts before us today, Ingram had the authority to act on behalf of the corporation; as the sole shareholder, Ingram could execute documents on behalf of the corporation without formal authorization. By contrast, Mike’s one-half interest in Hard Ball did not give him such authority.
Mike argues that this Court should create a similar rule for transfers of property by non-manager members of a limited-liability company. Such a rule would permit Hard Ball to declare the deed signed by Mike to be void, if it decided to do so, but would give Simmons no opportunity to challenge the validity of the deed. Simmons’s mortgage would therefore be worthless, because “[o]ne cannot be bona fide purchaser where his grantor did not have the legal title to convey.” Hess v. Hodges, 201 Ala. 309, 310, 78 So. 85, 86 (1918).
We start with the text of the statute. The language of §§ 10-12-21(b) and 10-12-23(d), Ala.Code 1975, is unambiguous: if a manager has been appointed, the members of the limited-liability company no longer have the authority to act on the company’s behalf. Those Code sections indicate an intent not simply to protect the limited-liability company, but also to protect third parties with whom it deals. If the deeds executed by the non-managing members are voidable rather than void, however, only the limited-liability company would be protected; third parties would be bound by such transactions, even though the limited-liability company is not. Without clear indication that the legislature intended that result, this Court declines to interpret §§ 10-12-21(b) and 10 — 12—23(d), Ala.Code 1975, in such a way and therefore declines to adopt the rule advocated by Mike in this case. We hold that a transaction, such as the one at issue here, by a member of a limited-liability company in contravention of the authority vested by the company’s articles of organization in a manager of the limited-liability company is void.[1] Thus, Mike’s attempt to transfer *837 title to the Deatsville property to himself was ineffective, and the deed signed on August 1, 2006, was void.
The trial court’s decision relied on the notice given to Simmons by the previous deeds, and the parties’ briefs also raise the question whether Simmons had adequate notice of Mike’s interest in the Deatsville property. However, because we conclude that the conveyance of the Deatsville property to Mike was void, we need not reach the question whether Simmons was a mortgagee without notice under Alabama law.

Conclusion

As a non-manager member of Hard Ball, Mike lacked the authority to transfer title to the Deatsville property from the limited-liability company to himself; his attempt to transfer title was therefore ineffective. Simmons therefore received title to the property by the mortgage from Hard Ball, regardless of whether he had notice of previous transactions regarding the property. We therefore reverse the trial court’s order and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and STUART, SHAW, and WISE, JJ., concur.

. Several other courts have considered this question, and the majority have concluded that the action of a member of a limited-liability company that is beyond that member’s authority is void. In 1230 Park Associates, LLC v. Northern Source, LLC, 48 A.D.3d 355, 355, 852 N.Y.S.2d 92, 93 (2008), the Supreme Court of New York County declared several loans from one limited-liability company to another "null and void” because the part owner "had no authority to enter into the relevant loan transactions.” Similarly, in Halstead Brooklyn, LLC v. 96-98 Baltic, LLC, 49 A.D.3d 602, 854 N.Y.S.2d 437 (2008), a brokerage agreement signed on behalf of the limited-liability company by someone other than a manager, in violation of the company’s operating agreement, was unenforceable. In Cement-Lock v. Gas Technology Institute, 618 F.Supp.2d 856 (N.D.Ill.2009), misconduct of non-manager members was not attributable to the limited-liability company when those members had no authority under the terms of the operating agreement or the applicable lili- *837 nois statute. Most recently, in BankPlus v. Kinwood Capital Group, L.L.C., 430 B.R. 758 (2009), a bankruptcy court held that, under Mississippi’s corresponding statutory provision, a deed, executed on behalf of the limited-liability company by a member who lacked that authority, "was void ab initio.” 43 B.R. at 759. This case is currently on appeal to the United States Court of Appeals for the Fifth Circuit, which has in turn certified this very question to the Mississippi Supreme Court. In re Northlake Dev., L.L.C., 614 F.3d 140 (5th Cir.2010). At least one court, however, has considered a similar statute and reached the opposite conclusion. In Livonia Property Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C., 717 F.Supp.2d 724 (E.D.Mich.2010), a provision in the Massachusetts Limited Liability Company Act that made certain recordable instruments binding on the limited-liability company if the instrument was signed by someone with authority was interpreted to permit the lack of authority to be cured by "[r]atification or adoption.” 717 F.Supp.2d at 738.